2007 ND 24

Patricia J. ROTHBERG, Plaintiff, Appellee and Cross–Appellant,

v.

Charles S. ROTHBERG, Defendant, Appellant and Cross–Appellee.

No. 20060191.

Supreme Court of North Dakota.

Feb. 28, 2007.

LaRoy Baird (argued) and Bonnie L. Storbakken (on brief), LaRoy Baird, P.C., Bismarck, N.D., for plaintiff, appellee and cross-appellant.

Scott K. Porsborg (argued) and Mitchell D. Armstrong (on brief), Smith Bakke Porsborg & Schweigert, Bismarck, N.D., for defendant, appellant and cross-appellee.

MARING, Justice.

[¶ 1] Charles S. Rothberg appealed from an order denying his motion to modify his stipulated spousal support obligation under a divorce judgment, and Patricia J. Rothberg cross-appealed from that part of the order denying her request for an award of attorney fees and costs incurred in resisting the motion. We conclude the district court's finding that Charles Rothberg did not establish a material change in circumstances to warrant modification of his stipulated spousal support obligation is not clearly erroneous, and the court did not abuse its discretion in denying Patricia Rothberg's request for attorney fees and costs. We affirm.

I

[¶ 2] The Rothbergs married in 1979 and subsequently adopted three children, one of whom is now emancipated. They divorced in August 2001 while Charles Rothberg was employed as a neurosurgeon at St. Alexius Medical Center in Bismarck under a contract running through June 2003 and paying him $400,000 per year plus compensation for excess call coverage. The parties' total income in 2001 was $483,822. The parties entered into a settlement agreement which addressed custody, visitation, child support, property division, and spousal support, and which was incorporated into the divorce judgment. Charles Rothberg agreed to pay Patricia Rothberg spousal support under the agreement:

*SPOUSAL SUPPORT.* After due consideration of the disadvantage that has been incurred as a result of this divorce, Defendant shall pay to the Plaintiff permanent spousal support in the amount of Thirty Six Hundred Dollars ($3,600.00) per month, commencing the 15th day of August, 2001, and continuing on the 15th day of each and every month thereafter, until (i) the Plaintiff dies, remarries or otherwise holds herself out as living in a matrimonial relationship or (ii) August 15, 2004 at which time, without any necessity of Plaintiff showing a substantial change in circumstances or need and as a present accommodation to the Defendant, the permanent spousal support obligation of the Defendant shall increase to Five Thousand Dollars ($5,000) per

month and continue thereafter on the 15th day of each and every month until the Plaintiff dies, remarries or otherwise holds herself out as living in a matrimonial relationship. Plaintiff acknowledges that a significant change of employment by way of disability or retirement may cause a significant change in the financial circumstances of the Defendant which may, but does not require, an adjustment of his spousal support obligation. Notwithstanding that acknowledgment by the Plaintiff, the parties do agree that the permanent spousal support required herein shall continue for no more than ten (10) years from and after the date of the divorce Judgment, unless Plaintiff would otherwise die, remarry or hold herself out as living in a marital relationship, or Defendant is still working.

[¶ 3] In 2002, St. Alexius offered Charles Rothberg a contract for further employment at a salary of $267,000 per year, which he declined, and his earlier contract with St. Alexius was not renewed when it expired in June 2003. Since then he has been working as a locum tenens, traveling around the country on temporary neurosurgery assignments and earning less than he had received under his employment contract with St. Alexius. In March 2005, he moved for a reduction in spousal support, claiming the nonrenewal of his St. Alexius contract and resulting reduction in income was a material change in circumstances justifying modification. According to Charles Rothberg, he earned only $200,819 from his locum tenens work in 2004, but he also received a $50,000 payment in 2005 for work performed in 2004. Following a hearing on the motion, the district court found Charles Rothberg had failed to prove a material change in circumstances that substantially affected his ability to pay and that was not contemplated by the parties at the time of the initial divorce judgment. The court also denied Patricia Rothberg's request for an award of attorney fees for responding to the motion.

[¶ 4] In *Rothberg v. Rothberg*, 2006 ND 65, ¶ 1, 711 N.W.2d 219, we reversed and remanded because "the district court's findings of fact lacked sufficient specificity to allow this Court to discern the factual basis for the court's determinations, and the district court failed to consider the appropriate legal standards when it denied Patricia Rothberg's request for attorney fees." Neither party requested a hearing on remand, and the district court supplemented its findings and denied both parties' requests. The court ruled Charles Rothberg had not established a material change of circumstances warranting a modification of spousal support because "both Charles and Patricia contemplated at the time they signed their Property Settlement and Child Custody Agreement in August of 2001 that Charles would remain well employed as a neurosurgeon and that Patricia would remain a stay-at-home Mom, which is exactly what has happened." The court further found:

2. Charles is employed as a neurosurgeon on a locum tenens basis working for health care providers in other cities and states with his home in Bismarck.

3. Charles earns and is capable of earning a gross income in excess of $250,000 per year.

4. Both Charles and Patricia report ample monthly expenses that are within the range of the gross monthly income or revenues available to them.

5. While Charles' gross annual income has dropped from 2001, 2002 and 2003 by more then [sic] $150,000, he still has ample income to meet his child support and spousal support obligations while at the same time meeting his own ample monthly expenses.

6. Patricia has sufficient gross monthly revenue to meet her ample monthly expenses and pay her own attorney fees.

## II

[¶ 5] Charles Rothberg argues the district court erred in finding there had been no material change in circumstances justifying a reduction in his spousal support obligation.

[¶ 6] In *Rothberg*, 2006 ND 65, ¶¶ 10–11, 711 N.W.2d 219 (internal citations omitted), we set forth the legal standards governing a motion to modify spousal support:

When the original divorce judgment includes an award of spousal support, the district court retains jurisdiction to modify the award. The party seeking modification of spousal support bears the burden of proving there has been a material change in the financial circumstances of the parties warranting a change in the amount of support. The district court's determination whether there has been a material change in circumstances warranting modification of spousal support is a finding of fact and will be set aside on appeal only if it is clearly erroneous.

A material change is a change that substantially affects the financial abilities or needs of the parties and that was not contemplated by the parties at the time of the original decree. In assessing whether a material change has occurred, the reasons for changes in the parties' income or needs must be examined, as well as the extent to which the changes were contemplated by the parties at the time of the initial decree. Not every change in the parties' financial circumstances justifies modification of spousal support, and no modification is warranted when the change is self-induced. This Court encourages agreements between divorcing parties, and

stipulated spousal support awards should be changed only with great reluctance.

[■■■] [¶ 7] Charles Rothberg contends the court's finding that he "earns and is capable of earning a gross income in excess of $250,000 per year" is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Hagel v. Hagel*, 2006 ND 181, ¶ 11, 721 N.W.2d 1.

[¶ 8] The district court found that Charles Rothberg's gross income for tax years 2000, 2001, 2002, and 2003 was $328,273, $483,822, $457,991, and $410,982, respectively. The court arrived at these figures based on Charles Rothberg's tax returns, including the tax returns for his professional corporation which he incorporated in August 2003 and elected to be treated as a Subchapter S corporation. With regard to Charles Rothberg's 2004 and 2005 gross income, the court reasoned:

For 2004 his only income employment is through his PC. His 2004 PC tax return [Exhibit D–12] shows a gross income of $296,958, which includes a 1099 for $50,581 earned in 2004 but not [sic] on which the 1099 was not issued or received until 2005. His personal tax return [Exhibit D–11] shows gross income of $200,819. To keep consistent the understanding of Charles' gross income for the years 2000, 2001, 2002, 2003 and 2004, only his PC tax return reported gross income will be used. While no tax information is available for 2005, Charles testified he earns for his locum tenens work $1,400 per day working 14 days per month plus overtime of up to ten hours at $175 per hour, for an average gross income of $21,350 per

month or $256,200 per year. There is no evidence that Charles cannot continue to make this level of gross income.

[¶ 9] Although Charles Rothberg complains about the district court's use of his Sub-chapter S professional corporation tax return in finding that he could earn "in excess of $250,000 per year," Charles Rothberg's testimony alone supports the court's finding. Charles Rothberg testified that during 2004 his locum tenens work "would average to about 21 to 24 days a month working, including travel time" for which he was not compensated. He further testified that he earns, and can continue to earn, $1,400 per day plus an additional $175 per hour for overtime, which ranges "anywhere from zero to ten hours." In an affidavit, Charles Rothberg also stated he desired to "slow down my lifestyle by decreasing time at work both to spend time with my children and for personal health reasons," and that his "goal is to work an average of 14 days per month (plus 4 travel days—total 18 days away) and spend the remaining time in Bismarck with my children." The court used Charles Rothberg's "goal" of 14 days of work plus 10 hours of overtime per month in arriving at a gross annual income of $256,200. The court's calculations represent the lower end of Charles Rothberg's earning capabilities considering his testimony that he worked between 21 and 24 days per month in 2004. We conclude the district court's finding that Charles Rothberg "is capable of earning a gross income in excess of $250,00 per year" is not clearly erroneous.

[¶ 10] Charles Rothberg argues the district court erred in failing to find that his reduction in annual income from more than $400,000 while he was employed at St. Alexius to its current level was not contemplated at the time the parties entered into their settlement agreement. He contends the spousal support agreement was signed "under the presumption that he would continue to earn in excess of $400,000 per year."

[¶ 11] Charles Rothberg began his neurosurgical practice in 1981. Patricia Rothberg stated in an affidavit:

Charles is a very difficult person to get along with and because of that he has had many difficulties in keeping employment. There were times when he was working on an independent basis during which I would be responsible for all billing, follow up, and accounts payable and receivable. During those times there were employees that simply walked off the job because of Charles' behavior and attitude. Charles has worked in 12 different positions since he entered the work force as a neurosurgeon. The changes in his employment resulted in 7 city moves for our family. The moves were disruptive to our family life and the children's education.

Because of his employment instability, Patricia Rothberg insisted that the settlement agreement contain a requirement that Charles Rothberg obtain occupational insurance "[i]n order to provide assurances for future compliance with the provisions as set forth herein concerning child support and spousal support ... [so that] the benefit derived from said policy of insurance would be in an amount, at a minimum, to meet the child support and spousal obligations as set forth hereunder."

[¶ 12] Charles Rothberg stated in an affidavit that the family moved to Bismarck in 1999, and he initially worked at Medcenter One where his gross annual salary was $465,000 per year plus incentives, which "was far in excess of what I had ever previously earned." He testified he left Medcenter One because of "[j]ust disagreements with the administration of the hospital" and accepted employment with St. Alexius. The director for the

Center of Integrated Medicine at St. Alexius testified that she first analyzed Charles Rothberg's production in January 2003 and noted it was "[s]ignificantly lower than [his production] should be in that specialty." She further testified that she and Charles Rothberg "talked about [the production issues] on a regular basis."

[¶ 13] Because the divorce judgment was based upon the parties' stipulated agreement, rather than upon the court's own findings, and because the parties are in a better position to understand their circumstances than is the district court, we view whether the change in circumstances was contemplated with greater scrutiny. *See Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D.1996); *Huffman v. Huffman*, 477 N.W.2d 594, 597 (N.D.1991). Charles Rothberg's income has fluctuated throughout his career, which indicates those fluctuations were contemplated at the time the settlement agreement was signed. *See Schmitz v. Schmitz*, 2001 ND 19, ¶ 10, 622 N.W.2d 176. This evidence supports the district court's finding that the parties did not contemplate at the time they entered into the settlement that Charles Rothberg would continue to earn more than $400,000 per year, but that the parties contemplated "that Charles would remain well employed as a neurosurgeon and that Patricia would remain a stay-at-home Mom, which is exactly what has happened."

[¶ 14] Charles Rothberg argues the district court's finding that his income is sufficient to comply with the $5,000 per month spousal support obligation is clearly erroneous.

[¶ 15] The ability to pay the amount of spousal support ordered is a factor in deciding whether a material change of circumstances has occurred. *See, e.g., Ebach v. Ebach*, 2005 ND 123, ¶ 12, 700 N.W.2d 684; *Gibb v. Sepe*, 2004 ND 227, ¶ 10, 690 N.W.2d 230; *see also*

*Rothberg*, 2006 ND 65, ¶ 11, 711 N.W.2d 219 ("A material change is a change that substantially affects the financial abilities or needs of the parties …") The court found that "Patricia has no job income and has no prospects of any significant job income," and consequently, her circumstances have not changed since the parties entered into the settlement agreement. She listed her monthly expenses as $6,758 per month. The court found that Charles Rothberg's average gross income was $21,350 per month. Charles Rothberg presented evidence that his monthly expenses totaled $19,558 per month. This figure included his $5,000 per month spousal support obligation, his $2,838 per month child support obligation, and $850 per month property settlement payment which expired on October 1, 2006. It also included a $3,100 monthly payment for a first mortgage on a house he purchased after the divorce currently valued at $265,000 and a second mortgage which consolidated his debt for "all vehicles" he had purchased after the divorce. The record shows that, after the divorce, Charles Rothberg purchased vehicles, motorcycles, and related equipment for more than $60,000. His monthly expenses further included $400 per month for his "Hobbies— trains, motorcycle, firearm," and an additional $250 per month for "Miscellaneous entertainment." Although he sold part of his train collection and firearms for $80,000 to pay debt, Charles Rothberg valued the remainder of his train collection at nearly $88,000. In assessing the parties' expenses, the district court said:

[P]eople seem to be able to spend (or over spend) the income available to them, largely based on the lifestyle to which they had been accustomed to during the marriage. Thus while the Court could take apart the respective monthly expenses of both Charles and Patricia, it finds nothing terribly wrong with the

way they are each spending their money, although it notes their respective monthly expenses are ample. The Court does note that Patricia sold the home she received with its debt in the divorce settlement and that she bought another house with less expensive monthly payments. The Court also notes that Charles sold about $80,000 worth of trains and guns, but that he still seems to be able to buy what he wants and to enjoy a good lifestyle. Certainly there are families getting along well from month to month on far less gross income than is available to either Charles or Patricia.

[¶ 16] Although Charles Rothberg interprets the district court's comments as an approval of his monthly expenses which would make it impossible for him to pay his spousal support obligation after taxes and other items are deducted from his monthly gross income, we do not interpret the court's comments in the same manner. We believe the district court was simply suggesting that Charles Rothberg may be required to adjust his spending priorities to meet his legal obligation. Moreover, we have said earned income is not the sole consideration in determining a party's ability to pay spousal support, and that a court must consider a party's net worth, including the extent of his assets and his earning ability as demonstrated by past income. *See McDowell v. McDowell*, 2001 ND 176, ¶ 13, 635 N.W.2d 139; *Schmitz*, 2001 ND 19, ¶ 10, 622 N.W.2d 176. We conclude the district court's finding that Charles Rothberg has the wherewithal to comply with his stipulated spousal support obligation is not clearly erroneous.

[¶ 17] Charles Rothberg nevertheless argues that his spousal support obligation should be reduced by 50 percent, from $5,000 per month to $2,500 per month, simply because his annual gross income has been reduced by 50 percent, from almost $500,000 to $250,000. Charles Rothberg relies upon *Meyer v. Meyer*, 2004 ND 89, ¶ 7, 679 N.W.2d 273, in which this Court concluded that the obligor's 30.6 percent reduction in income was "relevant to [the trial court's] finding that a material change in circumstances existed" to warrant a reduction in a stipulated spousal support obligation. According to Charles Rothberg, because this Court in *Meyer* "affirmed that a 30.6 percent reduction in income constituted a material change in circumstances," his "significantly greater reduction in income ... is a significant change of circumstances as a matter of law." However, in *Meyer*, at ¶ 8, 679 N.W.2d 273 (emphasis added), this Court pointed out that the district court had "determined the change in the parties' incomes *sufficiently affected Timothy Meyer's ability to pay* and Diane Meyer's need for support to warrant modification of the stipulated amount." Here, the district court found that Charles Rothberg has the ability to pay his stipulated obligation notwithstanding his reduction in income. Not every financial change in circumstances justifies a modification. *See Schmitz*, 2001 ND 19, ¶ 8, 622 N.W.2d 176; *Wheeler*, 548 N.W.2d at 31. A change in an obligor's financial circumstances that does not affect the obligor's ability to pay is not a "material" change in circumstances warranting a reduction in spousal support. *See Rothberg*, 2006 ND 65, ¶ 7, 711 N.W.2d 219; *Gibb*, 2004 ND 227, ¶ 10, 690 N.W.2d 230; *Schmitz*, at ¶ 10, 622 N.W.2d 176; *Wheeler v. Wheeler*, 419 N.W.2d 923, 926–27 (N.D. 1988); *see also Meyer*, at ¶ 21, 679 N.W.2d 273 (Maring, J., dissenting in part and concurring in part) (obligor "must establish that his ability to pay his spousal support obligation has been affected by his change of circumstances in order to be material"). Although Charles Rothberg's financial circumstances have changed, it is not a material change because he contin-

ues to have the ability to meet his stipulated spousal support obligation.

[¶ 18] We conclude the district court's finding that there has been no material change of circumstances warranting a reduction in Charles Rothberg's spousal support obligation is not clearly erroneous.

### III

[¶ 19] Patricia Rothberg argues the district court erred in denying her request for attorney fees and costs.

[¶ 20] In *Rothberg*, 2006 ND 65, ¶¶ 19–20, 711 N.W.2d 219 (internal citations omitted), we said:

> Under N.D.C.C. § 14–05–23, a district court has discretion to award attorney fees in divorce proceedings, including proceedings on motions to modify spousal support. An award of attorney fees under N.D.C.C. § 14–05–23 lies within the sound discretion of the district court and will not be set aside on appeal absent an abuse of discretion. A district court abuses its discretion if it misinterprets or misapplies the law.

> In deciding whether to award attorney fees under N.D.C.C. § 14–05–23, the court must balance the parties' financial needs and ability to pay.

On remand, the district court found:

Patricia's gross monthly revenues of $8,730 until October 1, 2006, when it will drop to a monthly gross income of $7,880, nicely covers her ample monthly expenses of $6,758. Charles' gross income is found by the Court to be sufficient to pay child support and spousal support to Patricia and to cover his ample monthly expenses, but it is not so much in excess of his expenses that he can afford to pay Patricia's attorney fees. The Court finds Patricia has the ability to pay her own attorney fees.

[¶ 21] We conclude the district court did not abuse its discretion in denying Patricia Rothberg's request for attorney fees and costs.

### IV

[¶ 22] We have considered the other arguments raised by the parties and conclude they are either unnecessary to address in view of our disposition of the case or are without merit. The order is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.