2012 ND 163

**Cheryl Rae SCHULTE, f/k/a, Cheryl Rae Kramer, Plaintiff and Appellant**

v.

**Kenneth Leroy KRAMER, Defendant and Appellee.**

No. 20110231.

Supreme Court of North Dakota.

Aug. 16, 2012.

See also, 711 N.W.2d 164.

Samuel S. Johnson, Wahpeton, N.D., for plaintiff and appellant.

Janel Brudvik Fredericksen, Wahpeton, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Cheryl Rae Schulte appeals from an amended divorce judgment eliminating Kenneth Kramer's obligations to pay her spousal support, to provide health insurance, and to pay non-covered medical costs. We affirm the trial court's conclu-sion that the award of health insurance was spousal support and not property divi-sion; we reverse, concluding the trial court clearly erred in granting Kramer's motion to eliminate his spousal support obli-gations; we reverse for the trial court to consider whether to grant Schulte's re-quest for attorney's fees; and we remand for further proceedings consistent with this opinion.

I

[¶ 2] Relevant facts are set forth in our prior decision in this case, *Kramer v. Kramer*, 2006 ND 64, 711 N.W.2d 164, and we will not repeat them here except as necessary to resolve the issues in this ap-peal.

[¶ 3] In 1973, Kramer and Schulte were married. In 2002, they entered into a legal separation agreement. Schulte subsequently sued for divorce, and the separation agreement was incorporated into a May 2005 divorce judgment. Kram-er appealed from the judgment, and this Court affirmed. *See Kramer*, 2006 ND 64, ¶ 23, 711 N.W.2d 164. Regarding spousal support, the divorce judgment required Kramer to pay Schulte $500 per month until she either remarried or died. The judgment also required Kramer to provide Schulte with health insurance and pay her non-covered medical costs. The specific provisions of the divorce judgment's con-clusions of law at issue stated:

9. That pursuant to paragraph seven of Exhibit III of the Property Settle-ment Agreement, the Defendant shall immediately pay the Plaintiff the sum of $3,500.00 representing back spousal sup-port payments from October, 2004 though April, 2005 and continue to make future spousal support payments on the 15th of May, 2005, and on the 15th of each and every month thereafter in the amount of $500.00 per month until the

Plaintiff shall remarry or die, whichever first occurs. Said spousal support shall be paid directly from the Defendant to the Plaintiff.

. . . .

13. Pursuant to paragraph three of Exhibit III of the Property Settlement Agreement, the Defendant shall continue to provide health insurance on the Plaintiff and pay for all noncovered medical costs, including deductible and co-payments, dental costs, optometric costs, orthodontic costs, chiropractic costs and psychological/psychiatric costs associated with the Plaintiff.

[¶ 4] At the time of the separation agreement and divorce judgment, Kramer was employed at Bobcat Company in Gwinner. In July 2010, while Kramer was employed in the maintenance department, his employment at Bobcat was terminated for violating company policy after he removed a discarded antenna from the Bobcat plant's scrap. On July 16, 2010, Kramer met with Bobcat representatives and viewed a videotape showing Kramer placing an item outside a fire exit door and returning after closing to pick up the item. Kramer subsequently acknowledged he was aware of Bobcat's policy that only allowed removal of cardboard and wood through the guard shack after following the proper procedure, a violation of which would "subject [an employee] to discipline up to and including termination."

[¶ 5] On July 22, 2010, Kramer wrote a letter to Bobcat, stating he "made a mistake" and "removed an item from the trash dumpster and took it home without going through company policy." Kramer apologized and requested Bobcat give him another chance to further his employment with them. On July 23, 2010, Donald Herbst, Bobcat's labor relations supervisor at the time, wrote a letter to Kramer concluding Kramer had violated plant rule number 29, theft or misappropriation of property, and stated his employment with Bobcat was terminated. On July 27, 2010, Kramer filed a grievance through his union, seeking to be reinstated to his position and alleging his punishment was too severe for the conduct.

[¶ 6] Kramer sought other employment after his termination from Bobcat, and he began working at Trail King in Fargo on August 9, 2010. On August 12, 2010, after the union grievance process, Bobcat sent a letter to Kramer allowing him to apply with the company for any open position at that time. If hired, Kramer would have been treated as a new hire, losing his seniority. Kramer was not offered his maintenance position back. Although testimony indicated there were open positions available at Bobcat in material handling, welding, and assembling departments, Kramer did not reapply for a position with Bobcat.

[¶ 7] In November 2010, Kramer moved the trial court to modify the divorce judgment to eliminate or, in the alternative, to reduce his obligation to pay Schulte spousal support under the 2005 divorce judgment. Kramer also moved the court to eliminate his obligations to provide Schulte's health insurance and pay all of her non-covered medical costs or, in the alternative, to order the parties to share the costs of Schulte's health insurance coverage and non-covered medical costs according to their respective incomes. Schulte opposed the motion. In April and May 2011, the trial court held a hearing, receiving evidence including testimony from Kramer, Schulte, and Herbst. At the time of his termination from Bobcat, Kramer was earning about $22.70 per hour. By the time of the hearing, Kramer was earning $14.50 per hour at Trail King and working about 40 hours per week. Kramer had also given up a second, part-

time job at Swanson Apartments in Gwinner by moving to Fargo.

[¶ 8] In its July 2011 decision, the trial court granted Kramer's motion and terminated his obligations under paragraphs 9 and 13 of the divorce judgment to pay spousal support, to provide health insurance, and to pay non-covered medical costs. Schulte thereafter moved the court to amend the findings of fact and order for judgment and for a new hearing, which the court denied.

[¶ 9] Schulte appealed, arguing the trial court erred in finding a material change in circumstances existed; the trial court erred in finding the material change in circumstances warranted elimination of Kramer's obligations to pay spousal support, to provide health insurance, and to pay non-covered medical costs; and the trial court erred in not awarding her attorney's fees.

## II

[¶ 10] Under N.D.C.C. § 14-05-24.1, the trial court retains jurisdiction to modify a spousal support order when awarded in the original divorce judgment. The standard governing our review of a trial court's decision on a motion to modify spousal support is well-established:

> When the original divorce judgment includes an award of spousal support, the district court retains jurisdiction to modify the award. The party seeking modification of spousal support bears the burden of proving there has been a material change in the financial circumstances of the parties warranting a change in the amount of support. The district court's determination whether there has been a material change in circumstances warranting modification of spousal support is a finding of fact and will be set aside on appeal only if it is clearly erroneous.

A material change is a change that substantially affects the financial abilities or needs of the parties and that was not contemplated by the parties at the time of the original decree. In assessing whether a material change has occurred, the reasons for changes in the parties' income or needs must be examined, as well as the extent to which the changes were contemplated by the parties at the time of the initial decree. Not every change in the parties' financial circumstances justifies modification of spousal support, and no modification is warranted when the change is self-induced. This Court encourages agreements between divorcing parties, and stipulated spousal support awards should be changed only with great reluctance.

*Rothberg v. Rothberg,* 2007 ND 24, ¶ 6, 727 N.W.2d 771 (quotations and citations omitted).

[¶ 11] In the present case, the trial court found there had been a material change in circumstances, warranting elimination of Kramer's spousal support obligations to Schulte. We conclude the trial court's finding that there had been a material change in circumstances is not clearly erroneous. However, the trial court's finding that the material change in circumstances warrants an elimination of the original spousal support is based on an erroneous view of the law.

[¶ 12] The original divorce judgment in this case was based on an agreement of the parties, therefore, this Court reviews the issue of modification of spousal support with greater scrutiny. *See Gibb v. Sepe,* 2004 ND 227, ¶ 9, 690 N.W.2d 230.

[¶ 13] Schulte and Kramer divorced in May 2005. Their divorce judgment incorporated a 2002 legal separation agreement requiring Kramer to pay Schulte $500 per month in spousal support

until she either remarried or died. Kramer appealed the divorce judgment arguing the legal separation agreement was unconscionable and should not be enforced. *Kramer*, 2006 ND 64, ¶ 1, 711 N.W.2d 164. Our Court concluded the agreement was not unconscionable; the agreement expressly contemplated divorce; and the trial court "did not err in deciding the parties freely and voluntarily entered into a settlement agreement that was fair and reasonable and the court did not err in enforcing the agreement and incorporating it into the divorce judgment." *Id.* at ¶¶ 14, 15, and 18. As we have explained, "[t]he trial court should be more reluctant to modify an original decree which is based upon an agreement of the parties than one based upon the court's findings." *Huffman v. Huffman*, 477 N.W.2d 594, 596 (N.D.1991); see *Toni v. Toni*, 2001 ND 193, ¶ 11, 636 N.W.2d 396.; *Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D.1996).

[¶ 14] As the moving party, Kramer had the burden of proving a material change in circumstances existed, warranting a change in the amount of support awarded in the original judgment. *See Rothberg*, at ¶ 6. "A material change is a change that substantially affects the financial abilities or needs of the parties and that was not contemplated by the parties at the time of the original decree." *Id.* Here, the trial court found a material change in circumstances had occurred based on evidence presented that established Kramer's income was significantly reduced when Bobcat terminated his employment and the reduction had not been contemplated at the time of the divorce judgment.

 [¶ 15] The trial court's decision on whether a material change in circumstances warranting modification of spousal support has occurred is a finding of fact subject to the clearly erroneous standard of review. *Rothberg,* at ¶ 6. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Leverson v. Leverson,* 2011 ND 158, ¶ 7, 801 N.W.2d 740.

[¶ 16] In reaching its decision, the trial court found that Kramer "was suspended and later fired" from his employment with Bobcat on July 23, 2010, "for removing an antenna from the garbage at the Bobcat plant"; that he "filed a grievance through his union seeking to be reinstated to his position" and "made whole"; that on August 12, 2010, Kramer "was instead offered an opportunity to reapply for any available positions" and "would be treated as any other newly hired employee"; and that Kramer had net earnings of $26,524.01 through July 16, 2010, and prior gross annual earnings of about $60,000 from Bobcat. The trial court further found that Kramer sought employment after his termination; that he started his employment with Trail King on August 9, 2010; and that his income with Trail King was $14.50 per hour, with annual gross earnings of about $30,000. The trial court thus found Kramer's annual income had been reduced from approximately $60,000 to $30,000 and that "[t]he change in [Kramer's] income was not contemplated by the parties at the time the agreement was negotiated." The evidence in this record supports the trial court's finding that the significant reduction in Kramer's income constituted a material change in circumstances that was not contemplated at the time of the divorce judgment. *See Rothberg,* 2007 ND 24, ¶ 6, 727 N.W.2d 771.

 [¶ 17] Once a trial court finds a material change in circumstances exists, it must examine the reason for the materi-

al change to determine if modification of support is warranted. *See Rothberg,* at ¶ 6; *see also Koch v. Williams,* 456 N.W.2d 299 (N.D.1990) (holding "[d]epending upon the cause of the change, a trial court may modify an award of child support when a material change in financial circumstances is demonstrated"); *Lipp v. Lipp,* 355 N.W.2d 817, 819 (N.D.1984) (explaining that "[t]he reason for changes in income must be examined ... as well as the extent that the changes were contemplated at the time of the agreed decree"); *Muehler v. Muehler,* 333 N.W.2d 432, 434 (N.D.1983) (holding "[a] determination that a change in circumstances has occurred is not an end in itself but triggers the further inquiry to determine what brought about the change"). Although the trial court's finding that Kramer's circumstances had changed since the divorce judgment and that the change in circumstances was material is supported by the record and not clearly erroneous, we are, nevertheless, convinced the trial court applied an erroneous view of the law when it found that the change of circumstances warrants a complete elimination of spousal support. As we have said, "[n]ot every change in the parties' financial circumstances justifies modification of spousal support, and no modification is warranted when the change is self-induced." *Rothberg,* 2007 ND 24, ¶ 6, 727 N.W.2d 771.

[¶ 18] The trial court found that Kramer's "actions lead [sic] to his termination and resulting reduction in income." The evidence in the record supports that finding. However, the trial court also found the reduction in Kramer's income was not voluntary, was not self-induced, and was not made in bad faith. Such a finding is in direct conflict with the court's finding that Kramer's actions led to his termination. In support, the trial court reasoned:

9. [Kramer's] reduction in income was not voluntary, self-induced or made in bad faith. *Although [Kramer's] actions lead [sic] to his termination and resulting reduction in income, his employer's response was not foreseeable. [Kramer's] conduct did not foreseeably jeopardize his employment.* [Kramer] had been employed with Bobcat for 13 years. He had been disciplined on only one or two occasions, several years prior, and had been given prior permission to remove the item he did from the plant.

(Emphasis added.)

[¶ 19] The trial court erred when it required that the evidence establish that "the employer's response" to Kramer's theft be foreseeable by Kramer and erred when it found that, because Kramer did not foresee his conduct would jeopardize his employment, Kramer's reduction in income was not voluntary or self-induced. Neither the record evidence nor our caselaw supports that rationale. Likewise, we are not persuaded by Kramer's argument that "[a]ctions by their very nature are self-induced; the unintended and unforeseeable consequences of those actions are not." Kramer essentially invites this Court to accept the position that his removal of his employer's property was not self-induced because it was his employer that placed him in a position of not being able to pay his support obligation by terminating his employment. In *Koch,* we rejected the argument that the husband's inability to pay was not self-induced because it was the sentencing court that incarcerated him and placed him in a position where he became unable to pay his support obligation by sentencing him to incarceration rather than to probation. 456 N.W.2d at 301. Our Court held it was the husband's own "voluntary, knowing conduct that placed him in his present incarceration and impecunious position." *Id.*

[¶ 20] Under our caselaw, once the trial court found Kramer's actions led to his termination, it essentially determined the reduction in income was self-induced, thereby triggering the necessity of further inquiry into whether a substantial showing of good faith or cause could be established to justify modification regardless of the self-induced conduct. *See Muehler*, 333 N.W.2d at 434.

[¶ 21] In *Muehler*, we explained the principle that "A self-induced decline in income does not, in the absence of a substantial showing of good faith or cause therefor, constitute such an exceptional change in circumstances as to afford the required basis for modifying an alimony award." 333 N.W.2d at 434 (quoting 24 Am.Jur.2d, *Divorce and Separation*, § 677, at 795 (1966)); *see also Koch*, 456 N.W.2d at 301. We explained that:

A determination that a change in circumstances has occurred is not an end in itself but triggers the further inquiry to determine what brought about the change. The type of change will govern the further inquiry. If it involves spousal or child support, or both, the basic inquiry is: Has a substantial change in the financial ability of the payer occurred? If yes, what was or is the underlying cause? Was it self-induced or is it the result of economic conditions, or has the payer become physically or mentally disabled, or did the payer incur new or additional financial obligations and, if so, were they voluntarily assumed or were they imposed by other factors?

*Muehler*, 333 N.W.2d at 434. In deciding whether facts supported a modification of the original spousal support award, our Court has explained "[o]ne factor to consider in determining whether a change of circumstances warrants a modification of an original divorce decree is whether the change is voluntary." *Huffman*, 477

N.W.2d at 597 (holding Jeryl Huffman voluntarily retired from the Air Force and chose not to accept a transfer to another base and concluding modification of spousal support was clearly erroneous); *Wheeler*, 548 N.W.2d at 31 (holding it was foreseeable the parties' financial circumstances would change and Bert Wheeler's voluntary retirement did not provide a sufficient basis for modification of spousal support). The record shows Kramer removed property from Bobcat against company policy and was terminated for that conduct. Kramer was aware of Bobcat's policy prohibiting removal of certain property. The termination of his employment based on his improper conduct caused the reduction of his income. Therefore, we conclude the trial court applied an erroneous view of the law by concluding that, because Kramer did not foresee his conduct would jeopardize his employment, Kramer's reduction in income was not self-induced. The record evidence and caselaw support that Kramer's voluntary and knowing conduct caused his reduction in income and placed him in a less financially secure position. *See, e.g., Huffman*, at 597; *Wheeler*, at 31.

[¶ 22] Although, our Court has said that generally a self-induced change in circumstances does not constitute valid ground for modification, in *Mahoney*, our Court recognized that " 'there may be instances when medical, psychological, or other valid reasons will support a [voluntary] change [in income].' " *Mahoney v. Mahoney*, 538 N.W.2d 189, 191 (N.D.1995) (quoting *Olson v. Olson*, 520 N.W.2d 572, 574 (N.D.1994)).

[¶ 23] We have said: "Absent a substantial showing of good faith or cause, a self-induced decline in income does not constitute such an exceptional change in circumstances as to afford the required basis for modifying a … spousal support award." *Mahoney v. Mahoney*,

516 N.W.2d 656, 661 (N.D.Ct.App.1994); *see Muehler*, 333 N.W.2d at 434. A trial court must make findings to support that the obligor has acted in good faith or there is good cause for the decline in his income. Under the circumstances of the present case and the nature of this change in income, Kramer must have demonstrated that he has engaged in good faith efforts to obtain employment commensurate with his established earning capacity. Our Court has stated that earned income is not the sole consideration in determining a party's ability to pay support. *Schmitz v. Schmitz*, 2001 ND 19, ¶ 10, 622 N.W.2d 176. "Rather, the court must consider a party's net worth, including the extent of his assets and his earning ability as demonstrated by past income." *Id.* Kramer had been employed by Bobcat for thirteen years and the trial court found he had previous gross earnings of approximately $60,000.00 per year, but it failed to make any findings whether Kramer sought employment in good faith based on his experience, qualifications, and earning capacity. Kramer testified he was an experienced welder, in good health, and had no disabilities that would prevent him from working. There is no evidence his earning capacity is diminished.

■ [¶ 24] We have said that there are a number of factors that must be analyzed in determining whether a material change of circumstances justifies a modification of spousal support and the "picture" as a whole must be considered in resolving this issue. *See Lipp*, 355 N.W.2d at 818. Another factor to be considered is whether the earning capacity of the obligee is the same as it was at the time of the divorce. *See Bingert v. Bingert*, 247 N.W.2d 464, 467 (N.D.1976). The trial court made no findings about Schulte's income or need for spousal support at the time of the original agreement to pay her

$500 per month in spousal support and whether it has changed. The parties' divorce judgment dated May 4, 2005, states Schulte's "annual gross income fluctuates between approximately $21,000.00 and $35,000.00" and Kramer "earns an annual gross income of approximately $62,000.00." The parties' earning capacities are quite disparate. The record indicates that Schulte can make at the most $12.00 per hour, but that Kramer can make between $21.70 and $22.70 per hour. Our Court has stated: "The trial court should be more reluctant to modify an original decree which is based upon an agreement of the parties than one based upon the court's findings." *Huffman*, 477 N.W.2d at 596; *Toni*, 2001 ND 193, ¶ 11, 636 N.W.2d 396; *Wheeler*, 548 N.W.2d at 30. In *Toni*, our Court emphasized that it encourages "spousal support awards based on agreements between the divorcing parties, and noted those agreements 'should be changed only with great reluctance by the trial court.'" 2001 ND 193, ¶ 11, 636 N.W.2d 396 (quoting *Huffman*, 477 N.W.2d at 597). In the present case, not only was there an agreement between the parties as to spousal support, but it was incorporated into a legal separation and ultimately into the parties' divorce judgment, which was upheld on appeal to this Court. *Kramer*, 2006 ND 64, ¶ 1, 711 N.W.2d 164.

■ [¶ 25] The trial court found that Schulte, who is 55 years of age, was experienced in cleaning and painting; had the potential to make $25,000 per year; and had no need for spousal support. Schulte testified her 2010 income was approximately $20,000, nevertheless, the trial court imputed an annual income of $25,000 to her. Because this is a modification of a spousal support award originally based on a stipulation, the trial court erred by not making findings whether Schulte's need

for spousal support was any different at the time of the modification hearing than at the time of the parties' original agreement to pay her $500 per month in spousal support. Further, financial need is only one basis for permanent spousal support. *See Sommer v. Sommer*, 2001 ND 191, ¶ 14, 636 N.W.2d 423 (holding permanent spousal support is appropriate when there is a substantial disparity in income, a disparity in earning capacity and marketable job skills, an economically disadvantaged spouse, a long-term marriage, a need to balance the burdens created by a divorce, and a need to consider the standard of living the parties' enjoyed).

[¶ 26] The trial court found that Kramer's ability to pay spousal support has been eliminated as a result of his reduction in income. However, the record does not support the court's finding. Kramer testified and offered an exhibit 1 setting forth his net monthly income and his monthly expenses. His net monthly income was represented as $2,570.00, and his total expenses, without any expenses for Schulte, equaled $1,942.00. Thus, maintaining the life insurance expense, but totally eliminating spousal support, health and dental coverage, and uncovered medical expenses leaves Kramer with $541.75 of funds over expenses.

[¶ 27] The trial court applied an erroneous view of the law in determining whether the material change of circumstances justified a modification of spousal support. Kramer moved the trial court to either eliminate or to reduce his spousal support obligations. On remand, the trial court must reconsider spousal support to Schulte, reducing it only in an appropriate amount taking into consideration the entire circumstances of Kramer's reduction in income and giving sufficient weight to the fact that the original divorce decree was based upon a stipulated agreement by the parties.

[¶ 28] In this case, based on the greater scrutiny view to modification, the evidence presented, and the applicable law, we conclude the trial court applied an erroneous view of the law in terminating Kramer's obligations to pay spousal support, and remand for a determination of an appropriate amount of spousal support under these circumstances.

III

[¶ 29] Schulte argues the trial court impermissibly modified the parties' property division when the court terminated Kramer's obligation to provide health insurance and pay non-covered medical costs, as set forth in the parties' separation agreement and incorporated at paragraph 13 of the divorce judgment's conclusions of law. She argues that Kramer's obligations under paragraph 13 are separate from the spousal support obligation under paragraph 9 of the divorce judgment's conclusions of law and that unlike paragraph 9, which required monthly spousal support payments until Schulte "shall remarry or die, whichever first occurs," the obligation under paragraph 13 does not cease upon Schulte's remarriage.

[¶ 30] In *Leverson*, 2011 ND 158, ¶ 11, 801 N.W.2d 740 (quoting *Kannianen v. White*, 2010 ND 170, ¶ 6, 788 N.W.2d 340), we said:

When a settlement agreement is incorporated and merged into a judgment, we interpret and enforce only the final judgment, not the underlying contract between the parties. *Serr v. Serr*, 2008 ND 56, ¶ 8, 746 N.W.2d 416; *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 10, 736 N.W.2d 441. Interpretation of a judgment is a question of law, and an unambiguous judgment may not be modified, enlarged, restricted, or diminished.

*Serr*, at ¶ 8; *Simburger v. Simburger*, 2005 ND 139, ¶ 7, 701 N.W.2d 880. Whether a judgment is ambiguous is also a question of law. *Serr*, at ¶ 8; *Simburger*, at ¶ 7.

We further explained that " '[t]he attributes of spousal support, rather than property division, are indicated if the divorce payments are directed to be monthly, unsecured, and terminable upon designated events, like death or remarriage of the obligee.' " *Leverson*, at ¶ 12 (quoting *Baker v. Baker*, 1997 ND 135, ¶ 8, 566 N.W.2d 806). *See also Lipp*, 355 N.W.2d at 821 ("To be spousal support a provision in a divorce judgment must effectuate the purposes of spousal support, such as rehabilitation or maintenance.").

[¶ 31] Here the trial court found that the obligations Kramer sought to modify were spousal support; that there was no disparity in the property distribution between the parties to justify treating the obligations as property settlement payments; that the disparity was in the parties' incomes at the time the separation agreement was negotiated; and that the spousal support, health insurance and non-covered medical cost payments were to equalize the disparity in income, not property. This Court previously held that the parties' separation agreement was not unconscionable. *Kramer*, 2006 ND 64, ¶ 15, 711 N.W.2d 164. We conclude the trial court correctly held the award under paragraph 13 was spousal support rather than part of the parties' division of property. However, because of our conclusion to reverse and remand the issue of modification of spousal support, the trial court should consider in that context its elimination of Kramer's obligations for health insurance and uncovered medical expenses.

## IV

■ [¶ 32] Schulte argues the trial court erred in not awarding her attorney's fees.

■ [¶ 33] Under N.D.C.C. § 14–05–23, the trial court in divorce proceedings has broad discretion to award attorney's fees and costs. *Heinle v. Heinle*, 2010 ND 5, ¶ 32, 777 N.W.2d 590; *Bertsch v. Bertsch*, 2006 ND 31, ¶ 8, 710 N.W.2d 113. We have provided the following criteria for a trial court's deciding whether to award attorney's fees under N.D.C.C. § 14–05–23:

> "In deciding whether to award attorney fees in a divorce action, the trial court must balance one [party's] needs against the other [party's] ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case. An award of attorney fees requires specific findings supported by evidence of the parties' financial conditions and needs."

*Bertsch*, at ¶ 8 (quoting *Reiser v. Reiser*, 2001 ND 6, ¶ 15, 621 N.W.2d 348 (citations omitted)). "A court must make specific findings supported by evidence of the parties' financial needs and conditions to award attorney fees." *Martinson v. Martinson*, 2010 ND 110, ¶ 14, 783 N.W.2d 633.

■ [¶ 34] An attorney's fees award is within the trial court's sound discretion and will not be set aside absent an abuse of discretion. *Bertsch*, 2006 ND 31, ¶ 8, 710 N.W.2d 113. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned determination. *Martinson*, 2010 ND 110, ¶ 15, 783 N.W.2d 633. " 'A [district] court acts in an arbitrary, unreasonable, or unconscionable manner when its

decision is not the product of a rational mental process by which the facts and law relied on are stated and considered together for the purpose of achieving a reasoned and reasonable determination.' " *Id.* (quoting *Terry v. Terry*, 2002 ND 2, ¶ 4, 638 N.W.2d 11).

[¶ 35] Schulte argues the trial court erred in denying her request for attorney's fees and costs. Schulte argues that without utilizing her property settlement award, she has no funds to pay her attorney's fees while Kramer has given up income from Bobcat and Swanson Apartments, has disposable income after his court-ordered obligations, and has a pension at Bobcat. Kramer seemingly concedes that the trial court made no specific findings regarding Schulte's request for attorney's fees, but argues this Court may rely upon implied findings when the record enables us to understand the factual determinations.

[¶ 36] Here, in not awarding Schulte's attorney's fees, the trial court made no findings explaining its decision, nor did the court appear to engage in an analysis of the criteria under N.D.C.C. § 14–05–23. *See, e.g., Heller v. Heller*, 367 N.W.2d 179, 184–85 (N.D.1985) (reversing and remanding trial court's denial of attorney's fees when decision rested exclusively on availability of unencumbered assets and this Court was unsure whether "all applicable criteria" were considered). Although Kramer urges us to rely on implied findings in light of the trial court's elimination of Kramer's support obligations, we are unable to discern whether the court considered all applicable criteria. Therefore, to the extent the court denied Schulte's attorney's fees request, we reverse and remand for a determination of whether to award attorney's fees in accordance with our criteria under N.D.C.C. § 14–05–23.

V

[¶ 37] We conclude that Kramer's reduction in income was self-induced; the trial court applied an erroneous view of the law; and it clearly erred in finding a material change in circumstances justifying a complete elimination of spousal support. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 38] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring in part and dissenting in part.

[¶ 39] Because the majority impermissibly reweighs the evidence and substitutes its judgment for that of the district court, I respectfully dissent from that portion of the majority opinion which reverses the district court's decision terminating Kramer's obligation to pay spousal support.

[¶ 40] Under N.D.C.C. § 14–05–24.1, the district court retains jurisdiction to modify a spousal support order when awarded in the original divorce judgment. "The district court's determination whether there has been a material change in circumstances warranting modification of spousal support is a finding of fact and will be set aside on appeal only if it is clearly erroneous." *Rothberg v. Rothberg*, 2007 ND 24, ¶ 6, 727 N.W.2d 771 (quotations and citations omitted); *see also Ebach v. Ebach*, 2008 ND 187, ¶ 9, 757 N.W.2d 34; *Greenwood v. Greenwood*, 1999 ND 126, ¶ 17, 596 N.W.2d 317 ("district court's determination as to *whether there has been an unforeseen material change in circumstances* justifying a reduction of support is a finding of fact" (emphasis added)). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if,

after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Leverson v. Leverson*, 2011 ND 158, ¶ 7, 801 N.W.2d 740; *Hagel v. Hagel*, 2006 ND 181, ¶ 11, 721 N.W.2d 1.

[¶ 41] Under the clearly erroneous standard of review, this Court does not reassess the witnesses' credibility or reweigh conflicting evidence. *Morton County Soc. Serv. Bd. v. Cramer*, 2010 ND 58, ¶ 26, 780 N.W.2d 688; *Stanhope v. Phillips–Stanhope*, 2008 ND 61, ¶ 10, 747 N.W.2d 79. "The district court has the advantage of judging the credibility of witnesses by hearing and observing them and of weighing the evidence as it is introduced, rather than from a cold record." *Stanhope*, at ¶ 10 (citing *Ramstad v. Biewer*, 1999 ND 23, ¶ 22, 589 N.W.2d 905; *Ludwig v. Burchill*, 481 N.W.2d 464, 469 (N.D.1992)); *see also Frueh v. Frueh*, 2009 ND 155, ¶ 7, 771 N.W.2d 593. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Stanhope*, at ¶ 10; *Frueh*, at ¶ 16. We do not substitute our judgment for a district court's decision merely because we might have reached a different result. *Cramer*, at ¶ 26; *Frueh*, at ¶ 16; *Niemann v. Niemann*, 2008 ND 54, ¶ 11, 746 N.W.2d 3. The complaining party on appeal bears the burden of demonstrating a finding of fact is clearly erroneous. *Frueh*, at ¶ 16; *Koble v. Koble*, 2008 ND 11, ¶ 6, 743 N.W.2d 797.

[¶ 42] The majority opinion correctly concludes the district court's finding that a material change of circumstances had occurred was supported by the record and was not clearly erroneous. However, I believe the majority improperly concludes the court erred when it found Kramer's reduction in income was not voluntary or self-induced. Further, contrary to the district court's actual findings, the majority opinion concludes the district court "essentially determined [Kramer's] reduction in income was self-induced" when it determined Kramer's actions led to his termination. In *Muehler v. Muehler*, 333 N.W.2d 432, 434 (N.D.1983), this Court explained that "[t]he legal concept of 'change in circumstances,' as used in divorce matters, is closely tied to equity and contemplates the application of equitable principles." We have thus explained that "a modification proceeding is grounded in equity and is, therefore, governed by the equitable concept that one who seeks equity must do equity," and "these equitable underpinnings of modification proceedings ... account for our holding that a voluntary or self-induced reduction in income does not justify a reduction" in support. *Koch v. Williams*, 456 N.W.2d 299, 301 (N.D.1990). Although the majority opinion concludes the court applied an erroneous view of the law in deciding whether the material change in circumstances justified a modification of spousal support, I believe the majority opinion's analysis of the findings is an attempt to both reweigh the evidence and reassess the equities considered by the district court in reaching its decision.

[¶ 43] After considering the testimony and evidence, the district court found there had been a material change in circumstances warranting elimination of Kramer's spousal support obligations to Schulte. The court made specific findings of fact that the reduction in Kramer's income was not voluntary, was not self-induced, and was not made in bad faith:

9. [Kramer's] reduction in income was not voluntary, self-induced or made in bad faith. Although [Kramer's] actions lead [sic] to his termination and resulting reduction in income, *his employer's response was not foreseeable. [Kramer's] conduct did not foreseeably jeopardize his employment.* [Kramer]

had been employed with Bobcat for 13 years. He had been disciplined on only one or two occasions, several years prior, and had been given prior permission to remove the item he did from the plant.

(Emphasis added.) In weighing the equities of the matter, the court found Bobcat's response to Kramer's removing an antenna from the plant's garbage was unforeseeable; *i.e.*, it was unanticipated that Kramer's actions would jeopardize his employment. The court specifically found Kramer "had been given prior permission to remove the item he did from the plant." While there was testimony at the hearing from Bobcat's labor relations supervisor explaining Kramer's actions and Bobcat's response to a violation of plant policy, in addition to the apparent opportunities for re-employment that may have existed at the plant following Kramer's termination, Kramer also testified on his own behalf regarding the circumstances of his termination and his reasons for not reapplying with Bobcat. The court believed Kramer's testimony.

[¶ 44] Kramer testified that he thought he had permission to take the antenna, which was considered garbage, and did not expect to be terminated, particularly considering his long-term employment and lack of disciplinary record. Kramer testified regarding his reasons for not reapplying with Bobcat. It is significant here that Bobcat did not offer to re-employ Kramer, either in the maintenance department or in any other department, but merely offered him the chance to reapply for any open positions as a new employee without any seniority. At the time of Bobcat's offer for him to reapply, Kramer had already secured employment with Trail King with some supervisory responsibility and was concerned whether, at the age of almost 60, he could make it through Bobcat's probationary period, even if hired in a less desirable position at Bobcat. The

court in essence placed greater weight on Kramer's explanation of the circumstances leading to his termination and decision not to reapply than on the testimony provided by Bobcat's labor relations supervisor. On appeal, this Court should not reweigh evidence or reassess the credibility of witnesses.

[¶ 45] The district court also addressed evidence regarding Kramer's ability to pay and Schulte's present needs. In its findings, the court compared the parties' financial circumstances and found that while Kramer's financial situation had significantly deteriorated, Schulte's expenses could be reduced, and her potential for greater earnings from full-time work had increased, based on her lengthy experience in cleaning and painting and multiple part-time jobs. The court found Kramer secured employment after his termination from Bobcat, but found Kramer's annual income had been reduced from approximately $60,000 to $30,000. The court found the more than 50 percent reduction in Kramer's income constituted a material change in circumstances and his ability to pay the divorce judgment's support obligations had been eliminated as a result of the reduction in income. The court found Kramer sought to eliminate $15,336 of annual obligations to Schulte, which totaled more than 51 percent of his current income.

[¶ 46] Regarding Schulte's need for support, Schulte testified that her monthly expenses were approximately $2,210. The district court found, however, that Schulte's necessary monthly expenses could be reduced. Schulte's testimony described various items as necessities, but the court found some were not necessities and less expensive alternatives were available. Although Schulte was working several part-time jobs, the court found, with 30 years of experience in cleaning and 40 years of experience painting, she was capa-

ble of working a full-time job and there was full-time work in Bismarck for which she had not applied. On the basis of Schulte's testimony that it would take $12.00 an hour for her to make more at a full-time job than at her part-time positions, the court found Schulte could make $25,000 per year. The court found Schulte has no need for spousal support.

[¶ 47] Regarding Kramer's ability to pay, the district court found Kramer had significantly reduced his spending after his termination from Bobcat, and despite his attempt to maintain his support obligations, Kramer had been unable to do so without relying on credit and incurring debt to meet his basic needs. The court found Kramer had no ability to continue paying health insurance obligations and his inability to pay Schulte's premiums placed her at risk for a lapse in coverage. The court found the change in Kramer's income was not contemplated by the parties when the separation agreement was negotiated, at which time Kramer had been with Bobcat for about five years, had a position in maintenance, and had significantly greater earnings than Schulte. The court also found Kramer did not contemplate that health coverage costs for Schulte would double.

[¶ 48] On the basis of this record, I would conclude the district court's findings are not clearly erroneous, the court did not misapply the law, and there is evidence to support the court's findings. I would affirm the district court's finding that there had been a material change in circumstances warranting the termination of Kramer's spousal support obligations.

[¶ 49] DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.