*In re* MARRIAGE OF SHIRLEY STEICHEN, Petitioner-Appellee, and CRAIG STEICHEN, Respondent-Appellant.

Second District No. 2—87—0141

Opinion filed December 10, 1987.

Jeffery M. Leving, of Law Offices of Jeffery M. Leving, Ltd., of Chicago, and Samuel J. Cahnman, of Springfield, for appellant.

Paul G. Brinkman and Terence C. Mullen, both of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, Craig Steichen, appeals from the order of the circuit court denying his motion to vacate a judgment for dissolution of marriage. Respondent contends that the court (1) abused its discretion when it failed to vacate the judgment of dissolution since that judgment incorporated a settlement agreement that respondent had agreed to under duress; (2) improperly entered a final dissolution order which materially altered the prior oral settlement agreement; and (3) abused its discretion when it granted a child support award in excess of the statutory guidelines. Respondent further maintains that the dissolution order requires reversal since the record on appeal lacks a transcript which demonstrates that grounds for dissolution were ever proved at a hearing. For the reasons set forth below we affirm.

Respondent and petitioner, Shirley Steichen, were married on November 13, 1982, and produced one child, Matthew, born December 26, 1983. Petitioner filed her petition for dissolution of marriage on April 18, 1985. In his answer, respondent sought dismissal of the petition, or, in the alternative, custody of Matthew. In addition, both parties petitioned for temporary custody and child support. The court subsequently entered an agreed order dividing Matthew's time evenly between the parties. That order further provided that respondent pay

$50 per week baby-sitting expenses, and $100 per month for child support. The custody issue was reserved for trial.

On February 13, 1986, the trial court entered an order finding respondent guilty of extreme and repeated mental cruelty toward petitioner. The court's order set a future hearing date for all remaining issues. Prior to the hearing, the parties submitted to two psychological evaluations with regard to child custody. Dr. Adrienne Allert recommended joint custody. However, Dr. Clyde Kelly recommended that petitioner retain custody and respondent be allowed liberal visitation rights.

Both parties appeared for hearing on September 9, 1986. Petitioner's counsel noted that the issue of grounds had previously been decided and promised to provide the court with a transcript of those proceedings. Counsel stated that she would be proceeding only on the issues of custody, visitation, real property, and personal property. At the commencement of the hearing, the court noted that after conference both parties had agreed to an oral settlement regarding the disposition of all remaining issues. The court further noted that although the parties were not satisfied with each and every term of the agreement, they were willing to proceed on the basis of that agreement.

Petitioner subsequently testified that the parties had reached a settlement. Petitioner stated that the terms of the agreement provided that (1) petitioner would retain custody of Matthew; (2) respondent would be granted liberal visitation; (3) respondent would be given the option to purchase petitioner's interest in a townhouse; and (4) respondent would pay petitioner $400 per month child support until Matthew reached school age, when the amount would be reduced to the statutory 20% of his net salary. Petitioner testified that she accepted the agreement and believed that it was fair and equitable.

Respondent was then called as a witness and testified that the terms of the agreement as described by petitioner were acceptable to him. Respondent had previously told the court that the terms were not agreeable to him, but changed his position after the court advised him that he could have a trial. Respondent further testified that he was not under any coercion or undue pressure to enter into the agreement. However, when asked if he thought the agreement was fair and equitable, the following colloquy took place:

"Q. And this settlement agreement then is a—do you feel it's fair and equitable?

A. No, but I have to say yes, right, just to get it over with.

Q. No, you can say the truth.

A. No, I don't.

Q. But it is acceptable to you, though?

A. Yes.

Q. Okay. Now, even though you have certain reservations about it, is it your instructions to me to proceed with this settlement?

A. Yes."

Upon further inquiry respondent testified that he used his own money to make the down payment of $15,000 on the townhouse. He also testified that his net income was approximately $1,500 per month. Previously, petitioner stated that she earned approximately $22,000 per year.

At the conclusion of the hearing the court found that although respondent was "somewhat reluctant to say that [the agreement] is something he's totally satisfied with," the parties nonetheless entered into the agreement voluntarily. The court further noted that the agreement would be incorporated into the judgment for dissolution of marriage. On October 9, 1986, the court entered the judgment for dissolution of marriage. Both the court and the attorney for petitioner signed the judgment. Respondent's attorney signed the judgment under a written notation on the last page stating, "agreed to as to form." Neither party signed the judgment.

On October 31, 1986, new counsel for respondent filed a motion to vacate the judgment of dissolution alleging that (1) respondent had been coerced to enter into the settlement agreement; (2) the custody provision was not in Matthew's best interest; and (3) the child support award was unconscionable.

At the subsequent hearing on the motion to vacate, respondent related the conference in the judge's chambers prior to the prove up wherein the judge stated that although both parents could easily take care of Matthew on their own, he did not believe in joint custody with equal time. Respondent further testified that he was unfamiliar with the legal system and thought he had to agree to the settlement. Respondent stated that he previously testified that petitioner could have custody "because [he] was told in judge's chambers that that [was] the way it was going to be and [he] felt [he] had no choice in the matter." However, respondent acknowledged that the judge told him that he had a right to trial. Finally, respondent testified that one week prior to the prove-up hearing he had begun a new job which paid $1,500 per month. However, he related that he left this employment two weeks after the hearing. He testified that his 1985 net income was between $8,000 and $9,000. He anticipated that his total net income for 1986 would be approximately $9,000 to $9,500.

The court denied respondent's motion to vacate. The court stated that although at prior conferences respondent indicated that he was not totally satisfied with the agreement, it was the court's belief that he did want to settle and did not wish to go to trial. The court further found that, despite his reservations, respondent had voluntarily entered into the settlement agreement without coercion. With regard to the child support issue, the court noted that at the time of the entry of the original order, it believed the amount to be reasonable given the child's age and needs. The court recommended that respondent bring a motion to modify the current support order rather than approach the issue through a motion to vacate the dissolution judgment in its entirety. Respondent then filed this timely notice of appeal.

Respondent first contends that the trial court erred when it failed to vacate the dissolution judgment since the record clearly demonstrated that he entered into the oral settlement agreement under duress. Respondent bases his claim of coercion upon his belief that he had no choice other than to agree with the settlement. Respondent also cites his statement at the hearing that he thought the agreement was neither fair nor equitable. Respondent further asserts that he did not understand what was occurring at either the conference in the judge's chambers or in open court. Respondent's contentions must fail.

 Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 502(a)) provides that the parties to a proceeding for dissolution of marriage may enter into an agreement for the disposition of their property and custody, support, and visitation of their children. When one party to the dissolution action seeks to vacate a property settlement incorporated into the dissolution judgment, all presumptions favor the validity of the settlement. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 313.) While such settlements are favored, a court will not effectuate the terms of an agreement if it is procured by fraud or coercion, or is otherwise contrary to the law, public policy, or morals. (130 Ill. App. 3d at 313.) Duress has been defined as the imposition, oppression, undue influence, or the taking of undue advantage of another's stress whereby that party cannot exercise his or her free will. (130 Ill. App. 3d at 314.) In order for a court to vacate an agreement on the basis of coercion, the movant must demonstrate by clear and convincing evidence that such coercion took place. 130 Ill. App. 3d at 314.

The cases cited by respondent in support of reversal are distinguishable from the instant action. In *James v. James* (1958), 14 Ill. 2d 295, 306, the court set aside a settlement agreement on the grounds

of duress after determining that the trial court had improperly instructed the wife regarding the law, and her own attorney told her she would have to settle since the matter had been set for hearing. The *James* court also found that even though the settlement agreement was preceded by negotiations, it was not carefully executed, but was instead hastily contrived in the hours immediately preceding the hearing. (14 Ill. 2d at 305-06.) In In re *Marriage of Moran* (1985), 136 Ill. App. 3d 331, 337-38, the court similarly set aside a settlement agreement after determining that the wife's attorney threatened to quit on the eve of the trial if she did not agree to settle, and the trial judge repeatedly misled the wife about the law and erroneously warned her that she would not fare better at trial. Finally, in *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 462, the court set aside a settlement agreement after determining that the record lacked evidence demonstrating whether the wife was ever consulted or advised by her attorney regarding the terms of the agreement prior to her testifying at the prove-up hearing.

The record in the instant action indicates that neither the court nor counsel subjected respondent to the extreme pressure to settle which is evidenced in the cases discussed above. The record contains many statements by respondent which demonstrate that the agreement was acceptable to him, that he wanted to proceed with the settlement, and that he knew that he had the alternative of proceeding to trial. Respondent was consulted and participated in the settlement negotiations. The trial court explained to respondent that he could proceed to trial. Further, there is no evidence beyond the court's expressed opinion of the practicality of joint custody arrangements that the court made any statement as to what would happen at trial. Respondent's statements affirming the agreement and his failure to object to the terms of the agreement when they were recited by petitioner at the hearing clearly evidence that he freely agreed to the settlement. (See In re *Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 585.) A court should not set aside a property settlement agreement merely because one party has second thoughts. (127 Ill. App. 3d at 586.) Accordingly, we find that the trial court properly denied respondent's motion to vacate since there was not sufficient evidence of duress or coercion.

Respondent next contends that the trial court erred when it entered a judgment for dissolution which materially altered the settlement agreement. He argues that although the settlement agreement contained provisions for reduction in the child support amount when the parties' child reached school age, this provision was not included

in the written judgment for dissolution.

We note that respondent failed to raise this argument at either the time the judgment was entered or in his motion to vacate. Accordingly, we consider this argument waived for purposes of appeal. (See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) In any event, we note that respondent's attorney agreed to the judgment of dissolution as to form. Furthermore, no attempt was made in the trial court to clarify this provision. In fact, in his petition for modification of the support amount, filed February 17, 1987, respondent fails to mention the omitted provision. Accordingly, we need not address the merits of this contention.

■■ Respondent next contends that the trial court abused its discretion when it entered a child support order in excess of statutory guidelines. We disagree.

Section 505(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(1)) sets forth guidelines for the court to use in determining the *minimum* amount of support. These guidelines provide that 20% of the supporting party's net income should be applied to support one child. (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(1).) These guidelines for minimum support are to be applied unless the court, after considering evidence presented on certain relevant factors, finds a reason for deviating from them. In contrast, section 505(a)(2) states, in pertinent part, that "[t]he guidelines may be *exceeded* by the court *without* express findings, *or by agreement of the parties.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(2).

In the instant action, the judgment of dissolution contained a provision ordering respondent to pay child support in the amount of $400 per month. This amount was $100 in excess of the minimum amount provided for by the guidelines based on respondent's net income of $1,500 per month. At the hearing, respondent affirmed that his employment and net income of $1,500 per month was the basis upon which the amount of child support was established. Judicial inquiry at the hearing also confirmed the basis for the support amount. Although the support amount was in excess of the minimum provided for in the guidelines, it was nonetheless agreed upon between the parties as allowed by section 505(a)(2). (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(2).) Moreover, even though the court was not required to do so, the record demonstrates that the trial court did enter findings which concerned the agreement and the basis for the child support amount. Specifically, the court stated that the amount of support was reasonable due to Matthew's age and needs. We agree with the trial court's

recommendation that in view of respondent's apparent change of circumstances, the proper way to address the child support issue is through a petition to modify.

Finally, respondent's assertion that the dissolution judgment requires reversal since the record is devoid of a transcript showing grounds is without merit. First, since this issue was not raised at the original hearing or in respondent's post-trial motion, we consider it waived on appeal. (See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) Second, the record contains two orders relevant to the issue of grounds. On February 10, 1986, the court entered an order setting "the hearing on the issue of grounds" for February 13, 1986. On February 13, 1986, the court entered an order finding respondent guilty of extreme and repeated conduct which constituted mental cruelty toward petitioner. That order stated that the cause came "to be heard on the issue of grounds, both parties appear[ed] in court, [and] testimony [had] been heard." Furthermore, we note that petitioner referred to a transcript of proceedings from the hearing on grounds. Thus, the record demonstrates that the trial court entered its finding as a result of a complete hearing on the issue of grounds. The record is devoid of any attempt by respondent to challenge that finding.

Accordingly, for the reasons set forth above the judgment of the circuit court denying respondent's motion to vacate is affirmed.

Affirmed.

LINDBERG, P.J., and UNVERZAGT, J., concur.