2009 ND 214

**Maureen Ann WOODWARD, Plaintiff and Appellant**

v.

**George WOODWARD, Defendant and Appellee.**

**Nos. 20080343, 20090053.**

Supreme Court of North Dakota.

Dec. 18, 2009.

William Kirschner, Fargo, N.D., for plaintiff and appellant; submitted on brief.

Jerilynn Brantner Adams, Fargo, N.D., for defendant and appellee; submitted on brief.

CROTHERS, Justice.

[¶ 1] Maureen Ann Woodward appeals from two orders denying her motion to modify and limit the visitation provisions of an amended divorce judgment, granting George Woodward compensatory visitation, ordering her to undergo a parental alienation and psychological evaluation and holding her in contempt for failing to comply with the visitation provisions of the divorce judgment. We affirm the orders, concluding Maureen Ann Woodward failed to establish the district court's findings of fact are clearly erroneous or the court's actions were an abuse of discretion.

I

[¶ 2] George and Maureen Ann Woodward were married in 1986 and have three children from their marriage. The parties divorced in 2006. Maureen Ann Woodward was awarded physical custody of the children, and George Woodward was awarded reasonable visitation. George Woodward remarried in 2007 and currently works as a physician in Grand Forks. Maureen Ann Woodward continues to reside in Fargo with the children, serves as their home school teacher and has not remarried.

[¶ 3] In 2008, Maureen Ann Woodward discontinued visitation, claiming the children were afraid of George Woodward's new wife, and moved to amend the divorce judgment so that George Woodward could exercise limited visitation with the children only when his new wife was not present. The judicial referee denied Maureen Ann Woodward's motion, granted George Woodward's responsive motion to hold her in contempt for withholding visitation, granted George Woodward compensatory visitation and ordered her to undergo a parental alienation and psychological evaluation. The referee also ordered her to pay George Woodward's attorney fees. Upon request for review, the district court adopted the judicial referee's findings and order.

[¶ 4] After Maureen Ann Woodward continued to deny George Woodward visitation with the children, he again moved to hold her in contempt, and she responded with a motion to suspend visitation. The district court found her in contempt and ordered that the two remaining minor children attend counseling as needed to "transition" them for visitation. The court ordered that Maureen Ann Woodward could purge herself of contempt by complying with the visitation provisions of the amended divorce judgment.

II

[¶ 5] Maureen Ann Woodward argues the judicial referee and district court's

finding that she was in contempt should be reversed because it is not supported by the evidence.

▬▬ [¶ 6] " 'Civil contempt requires a willful and inexcusable intent to violate a court order,' " and " 'a complainant must clearly and satisfactorily show that the alleged contempt has been committed.' " *Glasser v. Glasser,* 2006 ND 238, ¶ 12, 724 N.W.2d 144 (quoting *Montgomery v. Montgomery,* 2003 ND 135, ¶ 18, 667 N.W.2d 611); *see also* N.D.C.C. § 27–10–01.1(1)(c). "A district court has broad discretion in deciding whether to hold a person in contempt, and a court's finding of contempt will not be reversed on appeal unless there is a clear abuse of discretion." *Graner v. Graner,* 2007 ND 139, ¶ 32, 738 N.W.2d 9. "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Vicknair v. Phelps Dodge Indus., Inc.,* 2009 ND 113, ¶ 6, 767 N.W.2d 171.

▬▬ [¶ 7] Maureen Ann Woodward admitted during an evidentiary hearing that she denied George Woodward's court-ordered extended visitation, weekend visitation, and holiday visitation after the July 4th weekend of 2008. Although Maureen Ann Woodward claimed George Woodward's new wife was verbally abusive toward the children and the daughters were afraid of her, the judicial referee found Maureen Ann Woodward "failed to demonstrate that a visitation environment which may include [George Woodward's] current wife . . . endangers the children's physical or emotional health." We conclude the judicial referee and the district court did not abuse their discretion in finding Maureen Ann Woodward in contempt.

## III

[¶ 8] Maureen Ann Woodward argues the referee's finding that her actions had undermined the relationship between George Woodward and his children is clearly erroneous.

▬ [¶ 9] " 'A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding is induced by an erroneous view of the law.' " *In re J.K.,* 2009 ND 46, ¶ 14, 763 N.W.2d 507 (quoting *Interest of R.P.,* 2008 ND 39, ¶ 7, 745 N.W.2d 642).

▬ [¶ 10] In an affidavit, George Woodward stated Maureen Ann Woodward "minimizes my role as a parent" and "is attempting to marginalize me by restricting my access to our children in person and on the telephone, and also by alienating them from me." He said, "Maureen [Ann Woodward] has not tried to encourage our children to get along with [his new wife], but rather has reinforced any negative thoughts and feelings related to [his new wife]." George Woodward claimed Maureen Ann Woodward has "loudly berate[d] me and [my new wife] in front of the children" by calling him "a 'blockhead' and 'idiot' " and by calling her " 'mean' and 'Cruella de Ville.' " In her testimony, Maureen Ann Woodward admitted yelling at George Woodward in front of the children and others. Although Maureen Ann Woodward claims it was George Woodward and his new wife who actually undermined the children's relationship with him, "[w]e do not reweigh the evidence, and we give due regard to the [trier of fact's] opportunity to judge the witnesses' credibility." *Aasmundstad v. State,* 2008 ND 206, ¶ 16, 763 N.W.2d 748. We conclude the judicial referee's finding that Maureen Ann Woodward "has nurtured the children's insecurities and fears

and this has served to undermine the relationship between George [Woodward] and his children" is not clearly erroneous.

## IV

■ [¶ 11] Maureen Ann Woodward argues the judicial referee applied the wrong legal standard for determining whether the children should be forced to visit with George Woodward's new wife. The referee stated that she must grant visitation unless "visitation is likely to endanger the children's physical or emotional health." Maureen Ann Woodward contends the correct standard is whether circumstances exist indicating the best interests of the children would not be served by allowing visitation.

[¶ 12] This issue does not appear in the "Notice of Appeal and Specifications of Error" to the district court. The district court adopted the referee's decision. " '[A]n issue ... not raised or considered in the [district] court cannot be raised for the first time on appeal.' " See, e.g., Rutherford v. BNSF Ry. Co., 2009 ND 88, ¶ 13, 765 N.W.2d 705 (quoting John T. Jones Constr. Co. v. City of Grand Forks, 2003 ND 109, ¶ 18, 665 N.W.2d 698). We therefore decline to address this issue.

## V

[¶ 13] Maureen Ann Woodward argues the judicial referee erred in ordering her to have a parental alienation and psychological evaluation. We review this issue under the abuse of discretion standard. See Hendrickson v. Hendrickson, 2000 ND 1, ¶ 22, 603 N.W.2d 896.

■ [¶ 14] Contrary to Maureen Ann Woodward's argument, the referee did not order her to get the evaluations as punishment for contempt, but as a means of dealing with her frustration of visitation and her alienation of the children from their father. It is evident from the referee's decision that she believes Maureen Ann Woodward and the children might benefit from an evaluation. In *Hendrickson*, this Court recognized a district court's authority to order counseling for a parent if it is in a child's best interests. 2000 ND 1, ¶ 22, 603 N.W.2d 896. A district court also has authority to order psychological evaluations for a parent if it is in a child's best interests. *See, e.g.*, N.D.R.Ct. 8.7(d)(1) and (5) (authorizing guardian ad litem, who advocates the best interests of the child, to request a court-ordered evaluation); *Interest of N.C.C.*, 2000 ND 129, ¶ 3, 612 N.W.2d 561 (in change of custody proceeding, district court ordered the parties to submit to psychological examinations); *Millang v. Hahn*, 1998 ND 152, ¶ 12, 582 N.W.2d 665 (in visitation dispute, district court ordered father to complete a psychological evaluation); *Ludwig v. Burchill*, 481 N.W.2d 464, 465 (N.D.1992) (in change of custody proceeding, district court ordered both parties to submit to psychological evaluations).

■ [¶ 15] Maureen Ann Woodward claims the referee's order is "insufficiently certain and impossible to perform," asserting there is no evidence a "parental alienation" evaluation actually exists. The referee ordered the evaluation be conducted at Solutions in Moorhead, Minnesota. Parental alienation syndrome, a psychological condition, has been mentioned in this Court's case law since at least 1997. *See Loll v. Loll*, 1997 ND 51, ¶ 21, 561 N.W.2d 625; *Interest of T.T.*, 2004 ND 138, ¶ 17, 681 N.W.2d 779; *see also Graner*, 2007 ND 139, ¶ 7, 738 N.W.2d 9 (mentioning counselor specializing in parental alienation). We conclude that Maureen Ann Woodward's argument is without merit and that the referee did not abuse her discretion.

## VI

[¶ 16] George Woodward seeks costs and attorney fees under N.D.R.App.P. 38 for defending a frivolous appeal. Although the appeal is not meritorious, we conclude it is not frivolous and deny the request.

## VII

[¶ 17] The orders are affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, J., and GERALD H. RUSTAD, D.J., concur.

MARY MUEHLEN MARING, J., concurs in the result.

[¶ 19] The Honorable GERALD H. RUSTAD, D.J., sitting in place of KAPSNER, J., disqualified.