2014 ND 145

**Brian K. NIEUWENHUIS, Plaintiff and Appellant**

v.

**Lora N. NIEUWENHUIS, Defendant and Appellee.**

**No. 20130394.**

Supreme Court of North Dakota.

July 17, 2014.

Thomas M. Jackson, Bismarck, ND, for plaintiff and appellant.

James M. Cailao, Bismarck, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Brian Nieuwenhuis appeals from an amended divorce judgment awarding Lora Nieuwenhuis attorney's fees and determining her obligation to help with mortgage payments is satisfied. We reverse and remand, concluding the district court abused its discretion in partially vacating the original divorce judgment.

I

[¶ 2] The parties married in 1994. They were married for 15 years and have two minor children. Brian Nieuwenhuis owns an independent insurance agency through Farmer's Union Insurance, and Lora Nieuwenhuis is a school teacher. In 2009, they entered into a divorce stipulation under which they agreed they would continue to occupy their residence jointly, with their minor children, until they were able to sell their home. Pending the home sale, the parties agreed Lora Nieuwenhuis would pay $1,600 per month for her share of the $3,810 in monthly bills and expenses for the home, while Brian Nieuwenhuis would be responsible for the remainder. The stipulation further provided he would pay, among other things, her car payment, her automobile insurance, health insurance for the minor children, dental expenses, school lunches and activities for the children, piano lessons, and one-half of major clothing purchases for the children. She agreed to pay for any deductibles or other out-of-pocket expenses associated with her medical or vision expenditures; her cell phone; all maintenance, repairs, gas and oil for her vehicle; all household groceries and supplies as a tradeoff for her payment of a lesser share of the regular monthly bills; and any entertainment or transportation costs associated with out-of-town travel while the children were with her. The agreement provided that child support would be suspended until the home had been sold and the parties were living separately. After the home sold, Lora Nieuwenhuis was to have primary residential responsibility during the school year. Brian Nieuwenhuis was to have primary residential responsibility during the summer, and he was to pay $1,033 per month in child support. The agreement also provided that each party would indemnify the other for reasonable attorney's fees and costs associated with enforcing the agreement. The court entered a divorce judgment incorporating the terms of the parties' stipulated settlement agreement.

[¶ 3] In April 2012, Brian Nieuwenhuis moved to enforce the judgment, to find Lora Nieuwenhuis in contempt, and for attorney's fees and sanctions for her alleged failure to pay her share of the family's expenses, including the home bills, claiming she was $12,400 behind in payments. In response, she moved for relief from the judgment, asking, among other things, that the judgment be amended so she would be required to pay no more than $800.00 per month, and also asking that he be required to pay her between $300 and $400 for three months.

[¶ 4] After an evidentiary hearing, the district court granted her Rule 60(b) motion, determining that he "prepared a property stipulation and parenting plan which [Lora Nieuwenhuis] did execute but only under the direction of [Brian] who had previously established his intimidating

business decision conduct." The court concluded the stipulation of the parties placing primary residential responsibility with her for nine months of the year and then suspending all child support payments by him was not consistent with the child support guidelines. The court vacated the portion of the judgment suspending child support payments and awarded Lora Nieuwenhuis "temporary rehabilitative child support." The court also awarded her reasonable attorney's fees. The court concluded, "Said Amended Judgment shall incorporate all of the provisions of the agreement of the parties not previously amended by order entered herein."

[¶ 5] Brian Nieuwenhuis moved for amended or additional findings and, in the alternative, for a "new trial," arguing some of the findings were not consistent with the evidence. He informed the court that the parties had verbally agreed to sell the marital home and that a closing date was expected in the near future. After another hearing, the court found the marital residence had been sold since the initial hearing but again granted her motion to vacate the judgment, finding the settlement agreement was not the result of her knowing and consensual free will and the agreement in large part resulted from duress placed upon her. The court also vacated the portion of the judgment regarding her payment obligations:

> [T]he payment of $1,600 per month by [Lora] based upon her earned income represented 53 percent of [her] net monthly income and exceeded a reasonable percentage for [her] contribution. The Judgment entered herein is herewith amended so as to delete any obligation on the part of [Lora] for reimbursement to [Brian] for said alleged sum of $16,230.

[¶ 6] The court ordered Brian Nieuwenhuis to pay child support in the amount of $1,017 per month and ordered Lora Nieuwenhuis to file, within 10 days, a statement of attorney's fees and court costs incurred. The court entered an amended judgment consistent with the order, including an award of reasonable attorney's fees to her, which the court later set at $5,000.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. Brian Nieuwenhuis's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.

## II

[¶ 8] Brian Nieuwenhuis argues the district court abused its discretion in granting Lora Nieuwenhuis's motion to amend the judgment under N.D.R.Civ.P. 60(b).

[¶ 9] Lora Nieuwenhuis requested relief from the original divorce judgment under N.D.R.Civ.P. 60(b)(6), which provides:

> Grounds for Relief from a Final Judgment or Order. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (6) any other reason that justifies relief.

[¶ 10] The standard of review for motions under Rule 60(b) is abuse of discretion:

> A motion under subdivision (vi) of Rule 60(b), . . . is left to the sound discretion of the trial court and will not be disturbed on appeal unless the court abused that discretion. [*State Bank of Burleigh Cnty. Trust Co. v.] Patten*, 357 N.W.2d [239,] 242 [ (N.D.1984) ]; [*State*

v.] Red Arrow [Towbar Sales Co.], 298 N.W.2d [514,] 516 [ (N.D.1980) ]; In re Estate of Jensen, 162 N.W.2d 861, 870 (N.D.1968)....

An abuse of discretion by the trial court is never assumed and must be affirmatively established. Dvorak v. Dvorak, 329 N.W.2d 868, 870 (N.D. 1983); Avco Financial Services v. Schroeder, 318 N.W.2d 910, 912 (N.D. 1982). An abuse of discretion is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.

First Nat'l Bank of Crosby v. Bjorgen, 389 N.W.2d 789, 794 (N.D.1986).

[¶ 11] Prior to the home sale in this case, Lora Nieuwenhuis was to pay $1,600 per month for her share of the $3,810 in monthly bills and expenses for the home, while Brian Nieuwenhuis was responsible for the remainder. The district court granted her motion to vacate and eliminated the amounts she owed from these payment obligations:

> [T]he payment of $1,600 per month by [Lora] based upon her earned income represented 53 percent of [her] net monthly income and exceeded a reasonable percentage for [her] contribution. The Judgment entered herein is herewith amended so as to delete any obligation on the part of [Lora] for reimbursement to [Brian] for said alleged sum of $16,230.

■ [¶ 12] "When a judgment has been rendered and later set aside or vacated, the matter stands precisely as if there had been no judgment." 47 Am.Jur.2d Judgments § 714 (citing Flavell v. Ripley, 247 Ill.App.3d 842, 187 Ill.Dec. 621, 617 N.E.2d 1342 (2d Dist.1993); Nichols v. Nichols, 98 N.M. 322, 648 P.2d 780 (1982); Pringle v. Moon, 158 S.W.3d 607 (Tex. App.Fort Worth 2005)). "If the trial court order truly vacated the original judgment,

nothing remained of the judgment for the Smiths to challenge." Nielson v. Patterson, 204 Ariz. 530, 533, 65 P.3d 911, 914 (2003).

[¶ 13] North Dakota divorce cases have followed the same line of reasoning. Previously, when this Court has vacated divorce judgments, even if only in part, the Court has required that all interrelated property and support provisions be vacated in their entirety, leaving in place only the decree of divorce. See Galloway v. Galloway, 281 N.W.2d 804, 807 (N.D.1979) ("That part of the judgment which relates to the contractual matters of custody, property division and alimony is vacated."), and Peterson v. Peterson, 555 N.W.2d 359, 360 (N.D.1996) (trial court vacated all parts of the judgment except the decree of divorce, and after a hearing the court redetermined property division, custody, and child support). Because the divorce itself was left intact in these cases, they appear inconsistent with the general rule that "the matter stands precisely as if there had been no judgment." 47 Am.Jur.2d Judgments § 714. Nevertheless, an exception in divorce cases makes sense in light of the unique nature of these proceedings. See Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519, 521 (1918) (duty rests upon the court to, if possible, dispose of the case without affecting the judgment of divorce); Galloway v. Galloway, 281 N.W.2d 804, 807 (N.D.1979) ("[W]e find no reason why the divorce itself should be vacated.... That part of the judgment which relates to the contractual matters of custody, property division and alimony is vacated."). It would make little sense, for example, to vacate a final decree of divorce years after it was entered and the parties had remarried.

■ [¶ 14] Brian Nieuwenhuis's explicit contention is that the court abused its discretion in vacating the judgment.

Implicit in that argument is the extent of the court's authority to vacate the judgment. A court abuses its discretion when it misinterprets or misapplies the law. *See Wagner v. Wagner*, 2007 ND 101, ¶ 27, 733 N.W.2d 593. In light of the foregoing cases demonstrating custody, property division, and support payments must be vacated in their entirety, we conclude the district court erred as a matter of law and abused its discretion in this case by vacating only portions of the original judgment. A district court may not rearrange a property distribution, especially in the context of a settlement agreement, by picking and choosing certain provisions which are unfavorable to one party and vacating them, while at the same time requiring the other party to uphold his or her end of the bargain. A motion to vacate a judgment under Rule 60 is not an opportunity for the district court to reweigh the evidence and make its own determination about what the party should or should not have agreed to when entering into a voluntary settlement agreement. *See Galloway v. Galloway*, 281 N.W.2d 804, 806 (N.D.1979) ("something 'extraordinary' is required to justify the vacating of a judgment under Rule 60(b)(6)").

[¶ 15] Because the court erred in vacating only part of the divorce judgment, we reverse and remand.

### III

[¶ 16] Because the issues of child support and duress will arise on remand, we address these questions as a matter of law.

### A

[¶ 17] In vacating the original judgment, the district court found Lora Nieuwenhuis acted under the direction of Brian Nieuwenhuis, indicating his actions placed her under duress:

That Rule 60(b), N.D.Civ. P., provides the ultimate safety valve to provide enforcement of a Judgment arising by virtue of duress or the misconduct of an adverse party. *Peterson v. Peterson*, 555 N.W.2d 359 (N.D.1996). Herein, [Brian] prepared a property stipulation and parenting plan which [Lora] did execute but only under the direction of [Brian] who had previously established his intimidating business decision conduct.

That the evidence before the Court establishes that [her] financial obligations and waiver of certain property rights in the stipulation by [him] was not a voluntary or consensual participation and execution of the same, and further that the financial obligations imposed upon [her] by said stipulation exceeded [her] capacity to satisfy the same and comply with the resulting judgment.

[¶ 18] Duress occurs when an individual acts as a result of coercion or when the individual's actions are not voluntary. *See, e.g., In re Peterson's Dogs*, 2008 ND 225, ¶ 11, 758 N.W.2d 749 ("Waiver under duress is not voluntary."); *Disciplinary Bd. v. Wilkes*, 2005 ND 168, ¶ 3, 704 N.W.2d 809 ("Wilkes admits the Stipulation is given freely and voluntarily and without coercion or duress.").

[¶ 19] In the context of contractual law, N.D.C.C. § 9–03–05 defines duress as:

1. Unlawful confinement of the person of a party to a contract, of the husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband, or wife;

2. Unlawful detention of the property of any such person; or

3. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive.

Section 9–03–05, N.D.C.C., requires physical action to constitute duress.

[¶ 20] On remand, we leave the question of duress for the district court to determine in light of the applicable law set forth above. We note, however, that Lora Nieuwenhuis argued for relief in the "interests of substantial justice" because she was "unable to comply" with the terms of the stipulation and the terms "tilt greatly in Brian's favor." The record does not reflect that she clearly raised the issue of duress to the district court. If the court on remand again makes a duress determination, we instruct the court to do so in accordance with this decision.

### B

[¶ 21] In addition to forgiving Lora Nieuwenhuis's past due payment obligations, the district court also amended the original judgment by requiring Brian Nieuwenhuis to pay "temporary rehabilitative child support." Although she used N.D.R.Civ.P. 60(b) as the vehicle to ask for relief from the original divorce judgment, a party's available relief for child support modification is normally not limited to a remedy falling only under Rule 60. There are different avenues for obtaining child support outside of Rule 60(b). In *Rueckert v. Rueckert,* this Court stated:

Section 14–09–08, N.D.C.C., recognizes the mutual duty of each parent to provide their children with support and education suitable to the children's circumstances. Under Section 14–05–24, N.D.C.C., it is well established that a court does not have continuing jurisdiction to modify a property distribution in a divorce judgment [*Kuehl v. Lippert,* 401 N.W.2d 523 (N.D.1987)], but has continuing jurisdiction to modify child support....

....

Although we encourage settlements in divorce actions [*Seablom v. Seablom,* 348 N.W.2d 920 (N.D.1984)], "[w]e take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but *from a public policy* one.... Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in determining the factors of which parties may contract in domestic relations settings." *State of Minnesota v. Snell, supra,* 493 N.W.2d [656,] 657, 659 [(N.D.1992)].

....

Our statutes and case law thus recognize that, within the context of the best interests of the children, a court has continuing jurisdiction to modify child support even if the amount has been set by agreement between the parents. *State of Minnesota v. Snell, supra; Tiokasin v. Haas,* [370 N.W.2d 559 (N.D.1985)], *supra.*

*Rueckert v. Rueckert,* 499 N.W.2d 863, 867–68 (N.D.1993) (emphasis added).

[¶ 22] *Rueckert* recognizes a district court's continuing jurisdiction to modify child support despite the parties' settlement agreement when the agreement is contrary to public policy. The settlement agreement in this case provided:

The child support obligation shall be suspended in this matter until such time as the home has been sold and the parties are living separately.... Commencing with the month following the month the parties close on the sale of the home, Brian shall pay child support for the minor children in the amount of $1,033 per month....

[¶ 23] This case presents an unusual situation—both parents continuing to live in the same residence with the chil-

dren—a circumstance apparently not contemplated by the guidelines. Although we leave the application to the district court, public policy is not offended by the consensual suspension of child support when the parties are living in the same residence with the children, both parents are reasonably supporting the children, and the children's needs are being met.

[¶ 24] On remand, if public policy is addressed, we instruct the court to make a determination in accordance with this decision.

## IV

[¶ 25] Brian Nieuwenhuis argues the court erred in awarding attorney's fees to Lora Nieuwenhuis.

[¶ 26] Section 14–05–23, N.D.C.C., authorizes attorney's fees in divorce actions:

> During any time in which an action for separation or divorce is pending, the court, upon application of a party, may issue an order requiring a party to pay such support as may be necessary for the support of a party and minor children of the parties and for the payment of attorney's fees....

[¶ 27] He argues that although attorney's fees are authorized under the statute, that rule is secondary to the settlement agreement of the parties, which provides, "The parties agree to indemnify the other to the extent of any future payments made on the debts for which the other has agreed to make payment, including reasonable attorneys' fees and costs associated with enforcing this provision." He argues, on the basis of the clear language of the settlement agreement between the parties, she should be responsible for his attorney's fees.

[¶ 28] With regard to attorney's fees, the district court concluded in its amended judgment that "[she] shall be awarded rea-sonable attorney's fees and court costs incurred in bringing her Motion for Relief from Judgment." Later, the court entered an order specifying that the amount of attorney's fees awarded would be $5,000.00. The district court stated it took judicial notice of the financial status of the parties and it was informed as to the basis in fact and in law in support of the parties' motions. Otherwise, no specific findings in support of the award of attorney's fees were provided.

[¶ 29] This Court has stated the law for awarding attorney's fees in a divorce action:

> An attorney's fees award is within the trial court's sound discretion and will not be set aside absent an abuse of discretion. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned determination.

*Schulte v. Kramer*, 2012 ND 163, ¶ 34, 820 N.W.2d 318 (citation omitted).

[¶ 30] In *Kramer*, the court went on to explain that specific findings are needed for an award of attorney's fees:

> Here, in not awarding Schulte's attorney's fees, the trial court made no findings explaining its decision, nor did the court appear to engage in an analysis of the criteria under N.D.C.C. § 14–05–23. *See, e.g., Heller v. Heller*, 367 N.W.2d 179, 184–85 (N.D.1985) (reversing and remanding trial court's denial of attorney's fees when decision rested exclusively on availability of unencumbered assets and this Court was unsure whether "all applicable criteria" were considered). Although Kramer urges us to rely on implied findings in light of the trial court's elimination of Kramer's support obligations, we are unable to dis-

cern whether the court considered all applicable criteria. Therefore, to the extent the court denied Schulte's attorney's fees request, we reverse and remand for a determination of whether to award attorney's fees in accordance with our criteria under N.D.C.C. § 14–05–23. 2012 ND 163, ¶ 36, 820 N.W.2d 318.

[¶ 31] The district court in this case has failed to provide an explanation or findings to support its award of attorney's fees. Implied findings are insufficient for an award of attorney's fees under *Kramer*, 2012 ND 163, ¶ 36, 820 N.W.2d 318. Without the necessary findings, the award of attorney's fees must be reversed and remanded. Because the findings were insufficient, we need not decide whether the award was contrary to the original judgment and amounted to an improper partial modification of the judgment.

V

[¶ 32] Brian Nieuwenhuis argues the district court erred in finding his net *monthly* income is $42,747. Lora Nieuwenhuis agrees this appears to have been a scrivener's error and does not contest his net *annual* income is $42,747. Because the child support calculation was correctly made on the basis of $42,747 as Brian's yearly income, this appears to be a clerical mistake that does not affect the result in this case.

VI

[¶ 33] Brian Nieuwenhuis argues the court erred in ordering his child support obligation continue until the youngest child attains the age of eighteen.

[¶ 34] In the court's amended judgment, the child support provision provides:

Brian shall pay to Lora, as and for child support, the sum of $1,017.00 per month based upon Brian's current gross annual income of $62,793 and net [yearly] income of $42,747.00. The child support shall continue in a like manner until the youngest child attains the age of eighteen (18) or through the month in which that child graduates from high school.

[¶ 35] Brian Nieuwenhuis cites to N.D. Admin. Code § 75–02–04.1–10, which provides, in part, "The amount of child support payable by the obligor is determined by the application of the following schedule to the obligor's monthly net income and the number of children for whom support is being sought in the matter before the court." He argues that the regulation provides the child support order may be amended once the older child reaches the age of 18 or graduates from high school and that the court's amended judgment should be modified to allow a change in child support once the oldest child reaches the age of 18 or graduates from high school.

[¶ 36] The language of the order is unclear as to whether it allows for future modification of child support after the oldest child reaches 18 or graduates from high school. *See, e.g., Estate of Wicklund*, 2012 ND 29, ¶ 22, 812 N.W.2d 359 ("A district court's findings of fact should be stated with sufficient specificity to assist the appellate court's review and to afford a clear understanding of the district court's decision."). Lora Nieuwenhuis does not object to a modification of his child support obligation to a calculation premised upon support for one child once the oldest child has reached the age of majority or graduated from high school. We remand with directions that this provision be clarified to ensure a change in child support is allowed once the oldest child reaches 18 or graduates from high school.

## VII

[¶ 37] Brian Nieuwenhuis argues the facts do not support a conclusion Lora Nieuwenhuis satisfied her $1,600.00 per month payments for expenses while the parties were living together and she should thus be held in contempt.

[¶ 38] Under N.D.C.C. § 27–10–01.1(1), contempt of court is defined as:

a. Intentional misconduct in the presence of the court which interferes with the court proceeding or with the administration of justice, or which impairs the respect due the court;

b. Intentional nonpayment of a sum of money ordered by the court to be paid in a case when by law execution cannot be awarded for the collection of the sum;

c. Intentional disobedience, resistance, or obstruction of the authority, process, or order of a court or other officer, including a referee or magistrate;

d. Intentional refusal of a witness to appear for examination, to be sworn or to affirm, or to testify after being ordered to do so by the court;

e. Intentional refusal to produce a record, document, or other object after being ordered to do so by the court;

f. Intentional behavior in derogation of any provision of a summons issued pursuant to rule 8.4 of the North Dakota Rules of Court; or

g. Any other act or omission specified in the court rules or by law as a ground for contempt of court.

[¶ 39] "An inability to comply with an order is a defense to contempt proceedings based on a violation of that order, but the burden rests with the alleged contemnor to establish the defense and show an inability to comply." *Holkes-*

*vig v. Welte*, 2012 ND 14, ¶ 9, 809 N.W.2d 323. "Civil contempt requires a willful and inexcusable intent to violate a court order, and a complainant must clearly and satisfactorily show that the alleged contempt has been committed." *Woodward v. Woodward*, 2009 ND 214, ¶ 6, 776 N.W.2d 567 (quotation marks omitted).

[¶ 40] Brian Nieuwenhuis argues Lora Nieuwenhuis made nearly all of the payments for the first twenty months after the divorce. He argues she admitted she was initially able to pay the $1,600 per month and admitted she had been receiving increases in salary. He also argues she presented insufficient evidence to prove her expenses increased and made her unable to make the full payments.

[¶ 41] At the second hearing in this matter, she testified she could afford to pay him $1,600 per month for a while until she realized anything else she had to pay on was not getting paid. She testified she did not make the payments simply because she could not and at this point would be able to make payments of around $400 per month.

[¶ 42] The court found that the $1,600 per month she was required to pay in the judgment represented 53 percent of her net income, plus she was to make payment of all of her automobile expenses, except automobile insurance, which Brian Nieuwenhuis was supposed to have paid but failed to do so, and all household groceries and supplies for the entire family. Notwithstanding those obligations, she had paid 74 percent of the obligation. The court additionally found:

[He] has petitioned the Court to hold [her] in contempt of court for her noncompliance with the settlement agreement and the resulting Judgment. The Court does not find that [she] has willfully and intentionally avoided said

Judgment, and accordingly denies [his] petition and motion for [her] to be held in contempt of Court.

[¶ 43] "'A district court has broad discretion in deciding whether to hold a person in contempt, and a court's finding of contempt will not be reversed on appeal unless there is a clear abuse of discretion.'" *Woodward,* 2009 ND 214, ¶ 6, 776 N.W.2d 567 (quoting *Graner v. Graner,* 2007 ND 139, ¶ 32, 738 N.W.2d 9). "'A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.'" *Id.* (quoting *Vicknair v. Phelps Dodge Indus., Inc.,* 2009 ND 113, ¶ 6, 767 N.W.2d 171). On this record, we conclude the district court's decision to deny the petition for Lora Nieuwenhuis to be held in contempt of court is supported by the evidence and is not an abuse of discretion.

## VIII

[¶ 44] We reverse the partial vacation of the judgment and remand with instructions. We also reverse and remand the award of attorney's fees. Finally, we remand for a correction of the error regarding Brian Nieuwenhuis's income and remand for a modification of his child support obligation to clarify that support can be modified when the oldest child reaches the age of majority or graduates from high school.

[¶ 45] The district court judge presiding over this proceeding has retired. "On remand, the district court will need to make a Rule 63, N.D.R.Civ.P., certification prior to conducting further proceedings or, alternatively, order a new trial." *Clark v. Clark,* 2005 ND 176, ¶ 18, 704 N.W.2d 847. Rule 63, N.D.R.Civ.P., requires:

"If a judge conducting a hearing or trial is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the case may be completed without prejudice to the parties. In a hearing or a nonjury trial, the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness."

[¶ 46] DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.

[¶ 47] The Honorable MARY MUEHLEN MARING, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.

MARING, Surrogate Judge, concurring in part and dissenting in part.

[¶ 48] I concur in the majority opinion in its conclusions that the trial court's award of attorney fees must be reversed and remanded for findings of fact; that the amended judgment must be further amended to state correctly Brian Nieuwenhuis's yearly net income is $42,747 and to clarify that child support must be recalculated upon the oldest child reaching eighteen or graduating from high school whichever occurs latest but no later than age nineteen; and that the court's decision to deny the petition for contempt is not an abuse of discretion.

[¶ 49] I, respectfully, dissent from the remainder of the majority opinion. I disagree that stipulations entered into by parties to a divorce and ultimately incorporated into a judgment are to be strictly construed under contract law as to their validity and enforceability. Our Court has said again and again that a stipulation is

merged into the judgment. *See Wagner v. Wagner,* 1999 ND 169, ¶ 10, 598 N.W.2d 855 (holding "a contractual stipulation which is wholly incorporated into a divorce judgment ceases to be independently enforceable and is merged into the divorce judgment"). In *Kopp v. Kopp,* 2001 ND 41, ¶ 10, 622 N.W.2d 726 (citations omitted) (quotation marks omitted), our Court stated:

> [R]ule [60(b)(vi), N.D.R.Civ.P.,] provides for relief when the movant demonstrates it would be manifestly unjust to enforce a court order or judgment, and provides an escape from the judgment, unhampered by detailed restrictions. When it is disclosed that a judgment is so blatantly one-sided or so rankly unfair under the uncovered circumstances that courts should not enforce it, N.D.R.Civ.P. 60(b)(vi) provides the ultimate safety valve to avoid enforcement by vacating the judgment to accomplish justice. Relief under N.D.R.Civ[.]P. 60(b)(vi) is, by its very nature, invoked to prevent hardship or injustice and thus is to be liberally construed and applied.

A trial court, "in considering whether a settlement agreement between divorcing parties should be enforced, should make two inquiries: (1) whether the agreement is free from mistake, duress, menace, fraud, or undue influence; and (2) whether the agreement is unconscionable." *Vann v. Vann,* 2009 ND 118, ¶ 11, 767 N.W.2d 855.

[¶ 50] In the present case, I disagree with the majority opinion that the trial court found the stipulation unenforceable only on the basis of duress. The trial court also based its decision on the ground that it was unfair and unconscionable. The trial court held: "[T]he payment of $1,600 per month by [Lora Nieuwenhuis] based upon her earned income represented 53 percent of [her] net monthly income and exceeded a reasonable percentage for [her] contribution." Although the trial court did not use the terms "unfair" and "unconscionable," it clearly made findings that the amount of debt assigned to Lora Nieuwenhuis under the stipulation was so great that she could not have paid it at the time of the divorce based on her income and living expenses. I read the trial court's decision as stating that the allocation of debt to Lora Nieuwenhuis under the stipulation made it unconscionable and "rankly unfair"; a basis on which the trial court can find a stipulation unenforceable.

[¶ 51] Our Court has recognized "[m]arriage involves a confidential relationship, and the law should not permit one marital partner to take 'unconscientious advantage' over the other through the trust which is part of that relationship." *Crawford v. Crawford,* 524 N.W.2d 833, 836 (N.D.1994). In *Weber v. Weber,* our Court cited as authority *Principles of the Law of Family Dissolution: Analysis and Recommendations,* Tentative Draft No. 2, A.L.I. § 4.01 comment (1996) for the premise "[a]greements between spouses have traditionally been subject to various procedural and substantive rules beyond those which apply to contracts generally." 548 N.W.2d 781, 783 (N.D. 1996). We also cited to the *Uniform Marriage and Divorce Act,* 9A U.L.A. § 306 (1996) for the premise that "the terms of a separation agreement ... are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." *Weber,* at 783.

[¶ 52] The *Principles of the Law of Family Dissolution,* ch. 7, § 7.11, in comments a and b, (2002), points out how different the nature of divorce stipulations

is in comparison to other agreements or contracts and states:

a. *Scope and purpose.* The subject of this section need not be treated by these Principles, but could instead be left to the law of judgments. However, divorce decrees that incorporate, by recitation or reference, an agreement of the parties generally do not share those characteristics of judgments that justify severe restrictions on reopening. In other areas of law, a judgment typically embodies a judicial resolution of a legal claim, or a judicially supervised settlement. The parties have had their day in court, and thus the grounds for reopening should be narrow and the period for their assertion should be brief. By contrast, the divorce court typically exercises little or no oversight of the terms of the agreement it incorporates into the decree of dissolution.... Thus, the topic of reopening agreement-based dissolution decrees should be treated with due regard to the realities of family-dissolution practice and the goals of the law of family-dissolution, as well as those of the law of judgments.

. . . .

b. *Setting aside one or more terms of a decree on standard contract and judgment grounds.* Rules governing the setting aside of decree terms strike a balance between the competing values of finality and efficient administration of justice, on the one hand, and, on the other, procedural fairness and the important protective function of the law of family dissolution, which is intended to safeguard the interests of family members, particularly weaker family members.

In another treatise, the uniqueness of family law stipulations is pointed out:

[A] separation agreement may be set aside on grounds that would be insuffi-cient to vitiate an ordinary contract. Thus, for example, where a family's economic circumstances are so substantial and complex that a spouse needs competent professional assistance for a good understanding of the separation agreement, the agreement may be set aside where such advice was not received.

24A Am.Jur.2d, *Divorce and Separation,* § 1043 (2014).

[¶ 53] Other courts have recognized the uniqueness of family law stipulations. *See Lyons v. Lyons,* 289 A.D.2d 902, 904–05, 734 N.Y.S.2d 734 (N.Y.App.Div.2001) (holding "we first recognize that 'separation agreements are held to a higher standard of equity than other contracts and may be set aside if manifestly unfair to one spouse because of overreaching by the other'"). The New York Court of Appeals stated:

Agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith. There is a strict surveillance of all transactions between married persons, especially separation agreements. Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract.

*Christian v. Christian,* 42 N.Y.2d 63, 72, 396 N.Y.S.2d 817, 365 N.E.2d 849 (N.Y. 1977) (citations omitted).

[¶ 54] In the present case, the parties were living together at the time the divorce was commenced by Brian Nieuwenhuis, which was on November 10, 2009; at the time the stipulation was signed by Lora Nieuwenhuis on November 16, 2009; and at the time the original judgment was entered on November 20, 2009. Clearly, a fiduciary relationship existed throughout the process.

[¶ 55]   In accordance with the foregoing view of the unique character of divorce stipulations and the law that governs the enforceability of those agreements, I respectfully disagree with the majority opinion's restrictive definition of duress in this case.   We have recognized economic duress as a defense in a commercial contract case.   *See Mellon v. Norwest Bank of Mandan,* 493 N.W.2d 700, 701, 703 (N.D. 1992).   Economic duress should also be applicable to the enforceability of a divorce stipulation.

[¶ 56]   We said that in order for economic duress to be a defense in a contract action three elements must be present: "(1) that one side involuntarily accepted the terms of another;   (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Mellon,* 493 N.W.2d at 703;   *see Murray v. Murray,* 2011–Ohio–1546, ¶ 23, 2011 WL 1167177 (Ohio Ct.App.2011).   Other courts have defined duress for the purpose of its application as a defense in the family law context.   The Court of Civil Appeals of Alabama has held: "Duress has been defined as subjecting a person to improper pressure which overcomes his will and coerces him to comply with the demands to which he would not yield if acting as a free agent, and is a ground on which to support a setting aside of a divorce decree and underlying agreement." *Claybrook v. Claybrook,* 56 So.3d 652, 656 (Ala.Civ.App. 2010) (quotation marks omitted).   The Illinois Court of Appeals has held: "Duress has been defined as the imposition, oppression, undue influence, or the taking of undue advantage of another's stress whereby that party cannot exercise his or her free will." *In re Marriage of Steichen,* 163 Ill.App.3d 1074, 115 Ill.Dec. 234, 517 N.E.2d 645, 648 (1987).   I am of the opinion that the trial court can apply economic duress as a defense to the enforceability of

the divorce stipulation.   Duress can be caused by economic coercion.   The court should consider the extent of the financial control by one spouse over the other, together with the existence of the fiduciary relationship.   Thus, I would define duress in the family law context broader than the majority opinion.

[¶ 57]   I, also, respectfully disagree with the majority opinion's conclusion that the trial court erred in vacating only part of the divorce judgment.   The appellant, Brian Nieuwenhuis, never argued this point on appeal nor did he argue that to the trial court.   Therefore, the parties never briefed this issue.   Brian Nieuwenhuis argued that the evidence did not support the trial court's finding of duress.   He argued that the trial court abused its discretion in vacating the judgment and was clearly erroneous in its findings concerning duress. I am of the opinion that our doctrine of law of the case should apply to this appeal. We described the law of the case doctrine in *Beuchler Constr. v. City of Williston,* 413 N.W.2d 336, 339 (N.D.1987):

> Although, as generally used, the law of the case is defined as "the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same" [Black's Law Dictionary (1979) ], we believe that the doctrine is broader than stated.   Rather, the law of the case encompasses not only those issues decided on the first appeal, but also those issues decided by the trial court prior to the first appeal which were not presented for review at the first appeal.

Therefore, the trial court's decision to vacate only certain provisions of the judg-

ment and the stipulation was never an issue raised by Brian Nieuwenhuis on appeal and never briefed.

[¶ 58] Furthermore, partial invalidity and severability of divorce agreements has been addressed by one treatise:

> If different provisions in a separation agreement seem to carry within them their own consideration, and have no special reference to the consideration for other provisions of the contract, the elimination of particular provisions while others are retained does not impair the contract as a whole or in any way affect the other provisions. . . . Even a separation agreement stipulating that, if any provisions of the agreement are held invalid or unenforceable, others would nevertheless continue in full force, a provision of the agreement making an unconscionable property division can be declared null and void without a consequential effect on the remainder of the writing. However, it has also been held that an unconscionable provision of a separation agreement may be inseparable from the other provisions and render the entire contract void.

24A Am.Jur.2d, *Divorce and Separation*, § 1042 (2014).

[¶ 59] The settlement agreement between Brian Nieuwenhuis and Lora Nieuwenhuis contained the following provision:

> 19. *Modification.* . . . There can be no modification of this agreement, no waiver of its provisions or of any rights, conditions, or releases from obligation imposed here by *except by written instrument mutually agreed and duly executed or as ordered modified by the court under the laws of the State of North Dakota.* (Emphasis added.)

The settlement agreement also contained the following provision:

> 14. . . .

NOTICE: The court may redistribute property in a post-judgment proceeding if a party has failed to disclose property and debts or a party fails to comply with the terms of a court order or judgment distributing property or debts.

These provisions indicate that the parties' intent was to permit modification of some of the agreement's provisions without affecting other provisions. I agree generally that, under the law of judgments, the entire judgment is vacated. However, when the agreement itself contemplates modification of some provisions or even unenforceability of some provisions due to State law, the trial court should be permitted to determine the invalidity of provisions and whether they are severable from the rest of the agreement. I would instruct the trial court accordingly on remand.

[¶ 60] Finally, I respectfully disagree with the majority opinion's conclusion that because the parties both resided in the marital home post judgment, it was not against public policy to include in the agreement waiver of child support until the home was sold. The home was in both parties' names and Brian Nieuwenhuis was to receive any equity when the home was sold as part of the property settlement. Lora Nieuwenhuis had every right to continue to live with the children in the home. The fact that Brian Nieuwenhuis also continued to reside in the home until it was sold does not relieve him of his child support obligation.

[¶ 61] Lora Nieuwenhuis received primary residential responsibility of the children during the school year, and Brian Nieuwenhuis received primary residential responsibility of the children during the summer. Under this arrangement, Brian Nieuwenhuis would owe child support to Lora Nieuwenhuis under the child support guidelines. *See* N.D. Admin. Code ch. 75–02–04.1. The rationale for this "suspen-

sion" of child support was that the parties were living together until the house sold. However, the division of the debts reveals that Lora Nieuwenhuis was shouldering a payment of $1,600 a month which included payments toward the mortgage on the house, construction debt, property taxes, property insurance, electric bills, water bills, telephone bills, propane bills, dish network bills and waste management bills. Although her contribution to all of those living expenses was less than Brian Nieuwenhuis's contribution, that deficiency was made up by Lora Nieuwenhuis being required, under the agreement, to pay for "all household groceries and supplies (as a tradeoff for her payment of a lesser share of the regular monthly bills)." In addition, Lora Nieuwenhuis was to pay for any gifts for the children purchased by her, any magazine subscriptions for the children, all haircuts, health, and beauty items for the children except for those health care expenses for which Brian Nieuwenhuis would be responsible, and all entertainment or transportation costs associated with out-of-town travel or vacations while the children are with her. The trial court found that the $1,600 monthly payment alone was 53 percent of Lora Nieuwenhuis's net monthly income.

[¶ 62] Although the parties stipulated to share the debt on the home until it was sold and the living expenses in this manner, our Court should not conclude the provision waiving child support is not contrary to public policy. Our Court has clearly held:

> [W]e take a dim view of agreements purporting to sign away the rights of a child in support settings—not from a contractual background, but from a public policy one.... Due to the nature of domestic relations, we do not analyze transactions and compromises between the parties in a cold contractual frame—public policy plays a large role in deter-

mining the factors of which parties may contract in domestic relations settings.

*Rueckert v. Rueckert*, 499 N.W.2d 863, 867 (N.D.1993) (quotation marks omitted). Our legislature has codified a strong public policy in favor of ensuring minor children receive adequate support and maintenance from their parents. *Hewson v. Hewson*, 2006 ND 16, ¶ 9, 708 N.W.2d 889. If our Court is to instruct the trial court on remand, it should reference the equitable offset remedy, recognized by our Court in *Rueckert* and *Hewson*. As we stated in *Hewson*:

> The equitable offset remedy under *Rueckert* should not be understood to supersede a child's right to support. By its nature, the *Rueckert* remedy is only to be applied when it is "the most equitable means of granting the parties the benefit of their property settlement agreement, while at the same time recognizing the important public policy of placing on both parents responsibility for the adequate support and maintenance of their minor children."

2006 ND 16, ¶ 11, 708 N.W.2d 889 (quoting *Rueckert*, 499 N.W.2d at 871).

[¶ 63] Under the equitable offset remedy, the trial court must evaluate the obligor's contributions to the children while living with them, calculate the amount of child support that would have been correct from the original decree to the date of the children's move from the home and offset the amount of the past contributions from the support owed.

[¶ 64] Because I cannot agree with the law set forth in the majority opinion concerning the foregoing issues, I respectfully dissent. I would remand the matter to the trial court to decide the case in accordance with the law I have set forth herein.

[¶ 65]   MARY MUEHLEN MARING, S.J.